UNITED STATES, Appellee,

v.

Joseph J. TEBSHERANY, Disbursing
Clerk Third Class, U.S. Navy,
Appellant.

No. 64,522.
NMCM 88 3016.

U.S. Court of Military Appeals.

Argued Jan. 8, 1991.

Decided May 29, 1991.

For Appellant: *Lieutenant Mary L. Livingston, JAGC, USNR* (argued); *Lieutenant Commander P. McNeill Jones, JAGC, USN.*

For Appellee: *Lieutenant Commander Lawrence W. Muschamp, JAGC, USN* (argued); *Commander Thomas W. Osborne, JAGC, USN* (on brief).

## Opinion of the Court

COX, Judge:

Contrary to appellant's pleas, a general court-martial convicted him of conspiracy to commit larceny; unauthorized absence (3 days and 43 days); missing ship's movement; larceny (14 specifications); and forgery (24 specifications), in violation of Articles 81, 86, 87, 121, and 123, Uniform Code of Military Justice, 10 USC §§ 881, 886, 887, 921, and 923, respectively. He was sentenced to confinement for 10 years and 3 months, total forfeitures, reduction to E–1, and a bad-conduct discharge. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence. 30 MJ 608 (1990).

We granted appellant's petition for review to determine whether he was denied a speedy trial and whether the military judge

erroneously admitted certain documents offered as business records.[1] Finding no errors, we affirm the decision of the court below.

### I

This case arose when a discrepancy was discovered in appellant's pay account during the routine relief of the disbursing officer of his ship. Appellant was advised of the matter on July 11, 1986, and 3 days thereafter absented himself without authority. He remained absent for 43 days, during which time his ship departed Norfolk, Virginia, for operations in the Mediterranean Sea.

While he was absent, it became clear that there was a loss of considerable magnitude in the ship's accounts and that appellant and the disbursing officer, Lieutenant (junior grade) (LTJG) Pahnos, were implicated in the loss.[2] Consequently, when appellant returned to military control, he was confined. He was released from confinement after 86 days, placed on restriction for an additional 2 days, but thereafter was allowed to return to duty with no conditions on his liberty. Trial on the merits convened 274 days after appellant's initial confinement.[3]

---

1. The issues granted review were:

   I

   WHETHER APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL PURSUANT TO RULE FOR COURTS–MARTIAL (RCM) 707(A) AND THE UNITED STATES CONSTITUTION DUE TO PROSECUTORIAL MISCONDUCT BY GOVERNMENT COUNSEL BY HIS FAILURE TO DISCLOSE EVIDENCE TO APPELLANT WHICH FORCED APPELLANT TO REQUEST CONTINUANCES WHICH WERE DETERMINED TO BE DEFENSE DELAY.

   II

   WHETHER THE MILITARY JUDGE ERRED BY ADMITTING PROSECUTION EXHIBITS 59–62 AND THE TESTIMONY OF MR. NORMAN JOHNSON PERTAINING TO PROSECUTION EXHIBITS 59–62 BECAUSE THE EXHIBITS WERE IRRELEVANT AND UNDULY PREJUDICIAL, AND BECAUSE MR. [JOHNSON] WAS NOT TESTIFYING CONCERNING INFORMATION ABOUT WHICH HE HAD ANY PERSONAL KNOWLEDGE.

2. Lieutenant (junior grade) Pahnos pleaded guilty to one specification each of conspiracy to commit larceny, larceny, forgery, and conduct unbecoming an officer and a gentleman by allowing his subordinates to embezzle govern-

ment funds. His sentence to dismissal, 30 months' confinement, partial forfeitures, and a fine of $10,000.00 was affirmed by the Court of Military Review in a 9–page unpublished opinion. We denied his petition for grant of review, 30 MJ 28 (1990), and it would appear that his case is final.

3. At first blush, the delay in bringing this case to trial, standing alone, might cause trepidation. However, the principal offenses grew from a complex scheme involving phantom payments to members of the crew of appellant's ship over a period of 2 to 3 years. Each of those sailors had to be interviewed. In many cases handwriting exemplars had to be taken and compared to determine which payments were actually received by the purported payee and which were purloined by appellant. The magnitude of the investigation may be grasped in some sense by the fact that the Government's first formal response to appellant's request for discovery consisted of about 1,000 pages of investigative materials. Under these facts, we are satisfied that appellant's Fifth Amendment right to a speedy trial was not violated. *Cf. Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Notwithstanding the problems in bringing this case to trial, we must note, as did the military judge who heard this motion, that this case was

At this level we are concerned with two periods of delay attributed to the defense. Appellant argues that he was forced to request these delays because the Government failed to comply in any meaningful way with his requests for discovery.

The first continuance was requested by appellant's counsel on November 27, 1986, for the stated purpose of negotiating a pretrial agreement. At that point, the United States was not certain which of the two accused, appellant or LTJG Pahnos, was the more culpable (or perhaps the better witness). Both were seeking plea bargains, and there were several proposals and counter offers by counsel. Each was interviewed by agents of the Naval Investigative Service (NIS) and volunteered to submit to polygraph examinations to vouch for his truthfulness.

At the same time, the Government was attempting to convene a pretrial investigation. The investigating officer was flown to the Mediterranean area from London and arrived at the ship on November 25, 1986, and the Government intended to proceed the following day.

Appellant's counsel submitted a written request for delay, agreeing to "waive any speedy-trial issue (RCM 707) for delay past today's date." The same document requested discovery; however, there was no discovery to be had. The United States had little more information than the defense, and government counsel was preparing to conduct the pretrial investigation without benefit of prior interviews of the witnesses by criminal investigators or examination of many of the documents by auditors of the Naval Audit Service Office

of the Navy Finance Center, Cleveland, Ohio.[4]

The United States made its first formal response to counsel's discovery request on January 9, 1987, when it provided defense counsel with a charge sheet and a number of reports from NIS. Defense counsel also was aware that at least 84 persons were potential witnesses in this case and conceded as much, on the record, during the Article 32 investigation as well as at trial.

At that point, appellant advised his attorney that he was contemplating suicide. Counsel immediately forwarded a request for a competence hearing, which was favorably endorsed by the special court-martial convening authority. Appellant was examined by a board on February 19 but refused to cooperate. Given the option for further review—contingent upon his cooperation with the sanity board—he again refused. This information was conveyed to trial counsel, who arranged for the pretrial investigation to begin the following day.

On February 20, 1987, the investigating officer opened his hearing into these charges. Appellant's attorney immediately requested a delay, contending that he had just received 1700 pages of materials previously requested from the Government. After some questioning by the investigating officer, defense counsel conceded that he actually had received about 1000 pages of material in early January.[5] The investigating officer denied the request and directed the Government to put on its case. He reserved to the defense the right to present other evidence or to recall the Government's witnesses after review of the evi-

---

not a model of investigation and disposition. As he told the Government after concluding his findings:

> In short, gentlemen, the motion for a denial—the motion for dismissal due to lack of a speedy trial under 707(d) is denied, but I have to tell you, I think the government has fired its six-shooter into the pavement on this one, narrowly missing its foot on several occasions.

4. The exhibits offered at the pretrial investigation corroborate trial counsel's assertions that he was not withholding evidence from appellant and his counsel. During November and December 1986, the criminal investigation was far

from complete; and, while the Government had some idea of appellant's crimes, it was not fully aware of the depth and complexity of the scheme. Investigation exhibits 14 through 16 show that NIS was actively interviewing witnesses even as appellant and the United States attempted to strike a bargain as to his prosecution and sentence. From those exhibits it is clear that trial counsel would have been "flying blind," as he put it, had he been forced to proceed with the investigation on November 28, 1986.

5. Defense counsel made the same concession at trial.

dence. He also found that the material recently disclosed had no impact on the testimony of the Government's first witness, Mr. Fletcher, an auditor from the Naval Audit Service Office.

Although he professed an inability to do so, appellant's counsel did cross-examine the second witness, NIS Special Agent Karshner, with some effect. The third witness was the co-actor, LTJG Pahnos, whom counsel examined at some length. Following this, the investigating officer recessed the hearing for 4 days to allow counsel to digest the materials most recently furnished by the Government. When the hearing reopened, the Government presented one additional witness and Special Agent Karshner, whom counsel again cross-examined.[6]

Defense counsel then asked that the Government produce the 84 witnesses listed in the investigation for live testimony and the recall of Mr. Fletcher, who had departed the immediate area. The investigating officer denied the former request. He also refused to require Mr. Fletcher to return to the area for examination, but he offered the alternative of examination by speaker phone. Counsel declined the offer.

The formal report of the sanity board was received by the convening authority on March 4, 1987. The military judge found that the Government's accountability recommenced on that date.

■ A component of effective representation of an accused at the pretrial stage is preparation for an Article 32 investigation. *United States v. Worden,* 17 USCMA 486, 38 CMR 284 (1968). If the Government interferes with discovery or acts in bad faith to preclude defense counsel's preparation for that proceeding, an accused would be deprived of his right to effective representation. From this, it would follow that time requested by counsel to examine material not disclosed until the pretrial investigation might, under facts showing bad faith, be charged to the United States in accounting for pretrial delay.

■ However, the Government has demonstrated that it did not act in bad faith. Appellant's suggestion that the requests to delay the pretrial proceedings were caused by the failure of the Government to disclose its case is not supported by the facts. As to the first delay, it is clear that he and his counsel were seeking to plea bargain with the Government. Therefore, his request to delay the Article 32 investigation to allow him to continue negotiations caused that period of time to be excluded from the 120 days in which the Government was required to bring him to trial. RCM 707(c)(3), Manual for Courts–Martial, United States, 1984; *United States v. Longhofer,* 29 MJ 22, 28 (CMA 1989).

■ The second delay also was properly attributed to appellant. A request for a hearing into the accused's sanity is excluded from the Government's accountability. RCM 707(c)(1)(A). Appellant's argument that the time from February 20 to March 4, 1987, should not be charged to him because of manipulation of the discovery process has no merit. Assuming that the argument was not waived by the failure to present it to the military judge, we conclude that the Government scrupulously honored appellant's discovery rights. While some of the materials furnished on the eve of the investigation were new, about half of the documents had been provided over 1 month before. Further, it is clear from defense counsel's participation in the hearing that he was prepared for the proceeding.

■ The fact that the Government had not completed the formalities to convene this court-martial does not relieve appellant of the delay. Appellant's refusal to cooperate in the proceedings cannot be attributed to the United States. Thus, the military judge properly attributed the delay to the defense.[7]

---

6. The additional witness merely testified to certain matters relating to the foundation of documentary evidence.

7. Under these circumstances, we need not address the Government's contention that under RCM 701, Manual for Courts–Martial, United States, 1984, it need not furnish discovery to an

## II

■ The second granted issue raises the question of the necessary foundation for admission of computer-generated documents as business records under the Military Rules of Evidence, Manual, *supra*. The proffered documents were records of appellant's stays at the Resorts International Casino Hotel in Atlantic City, New Jersey. Some exhibits were receipts for hotel rooms, food, and beverages, and they included a credit application by appellant and a "Customer Action Report" showing his wagers. Other documents showed that the casino provided appellant with complimentary lodging, drinks, and food, a routine practice of the establishment for customers who gamble considerable sums of money at its tables. The exhibits were offered through the testimony of Mr. Johnson, the supervisor of microfilm and records retention, and records custodian of the casino. Mr. Johnson testified extensively concerning the content of the documents and the procedures used in compiling the data therein.

We have recently held that a witness supplying the foundation for admission of such records need only be generally familiar with the records-keeping system. *United States v. Garces*, 32 MJ 345 (CMA 1991). Mr. Johnson not only was familiar with the documents, he was also the custodian of the records and, thus, was the proper person to authenticate them and to describe their contents for the court-martial.

accused until charges are referred. *But cf. United States v. Worden*, 17 USCMA 486, 38 CMR

The fact that Mr. Johnson was unable to totally describe all entries on the documents is not determinative of their admissibility. Unlike the common law, the Military Rules of Evidence and their Federal counterpart do not require that the witness supplying the foundation for the records be intimately familiar with the business practice represented thereby. *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir.1986); *United States v. Garces, supra* at 347; *United States v. Dababneh*, 28 MJ 929, 936 (NMCMR 1989). Under the circumstances of this case, the Government showed by a preponderance of the evidence that the documents were records of regularly conducted activity.

■ The remaining questions relate to the relevance of the documents. The Government's theory was that appellant had stolen money from the ship's pay accounts to finance his life style as a high roller at the gambling mecca. This evidence indeed shows that appellant wagered (and lost) large sums of money over the relevant period of time. Such amounts would be well beyond the pay and emoluments of a junior petty officer in the U.S. Navy. Therefore, the documents were relevant to show that it was more likely than not that appellant was a thief.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.