**UNITED STATES**

v.

**Michael J. CARPENTER, Subsistence Specialist Second Class, U.S. Coast Guard.**

**CGCM 0042.**
**Docket No. 968.**

U.S. Coast Guard Court of Military Review.

Jan. 27, 1992.

Trial Counsel: LT John B. Gately, USCG.

Defense Counsel: LT Jeffrey D. Stieb, USCG.

Appellate Defense Counsel: LCDR G Arthur Robbins, USCG.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Two BAUM, GRACE and BASTEK, Appellate Military Judges.

GRACE, Judge:

The Appellant was tried by a general court-martial consisting of a military judge

alone. Contrary to his pleas, he was found guilty of two specifications of assault with a dangerous weapon under Article 128 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928, one specification of impersonating an agent of superior authority under Article 134, UCMJ, 10 U.S.C. § 934, two specifications of willfully damaging military property under Article 108, UCMJ, 10 U.S.C. § 908, and one specification of dereliction of duty under Article 92, UCMJ, 10 U.S.C. § 892. He was sentenced to confinement at hard labor for fifteen months, reduction to the lowest enlisted pay grade (E–1), and to be discharged from the service with a Dishonorable Discharge. The convening authority approved the sentence as adjudged.

On the evening of 31 January 1990, the Communications Watch at the Brant Point Coast Guard Station on Nantucket Island was disrupted when four .22 caliber bullets smashed through the watchroom's double-plated glass window where a Coast Guard watchstander was on duty. Two nights later, at a Coast Guard government housing unit, three more shots were fired through a bathroom window just as the occupant left the bathroom and turned out the light. No one was injured in either incident.

Petty Officer Second Class Michael Carpenter was accused of firing the shots and was arrested and placed in pretrial confinement.

The Appellant has raised four errors before this court. Oral argument was heard on October 17, 1991, and the case is ready for decision.

Petty Officer Carpenter was arrested and placed in pretrial confinement on 3 February 1990. On March 5, the Convening Authority ordered a sanity board under Rule for Courts–Martial 706. "If it appears to any commander who considers the disposition of charges ... that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial,

that fact and the basis of the belief or observation shall be transmitted ... to the officer authorized to order an inquiry into the mental condition of the accused." R.C.M. 706(a). The Convening Authority is authorized to order such an inquiry before referral of charges. R.C.M. 706(b). The basis for ordering the evaluation was "the seriousness of the charges and apparent lack of discernible motive on the part of the accused...." Commander, U.S. Coast Guard Group Woods Hole letter dated 5 March 1990. After an examination by a one-person board, the Appellant was declared mentally competent to participate in his own defense and was found not to be suffering from a mental disease or defect at the time of the commission of the offenses.

On 3 May 1990, the Trial Counsel informed the Defense Counsel that he believed that the Appellant was not competent to stand trial. The Trial Counsel had recently learned that the Appellant continued to claim that he was a United States Treasury Agent. The Trial Counsel had also received information that the Appellant had claimed to have been with the C.I.A. This information led the Trial Counsel to believe that the Appellant might be suffering from a grandiose delusional disorder. Additional information had also come to the Trial Counsel's attention that Appellant had made threats against a local police officer and had "drawn down" on a fellow crewmember on 31 January 1990. ("Drawing down" apparently involved pointing a pistol at the crewmember and continuing to point it at him for an extended period of time.)

On May 5, 1990, the Trial Counsel requested another sanity evaluation under R.C.M. 706. An R.C.M. 802 Conference was held,[1] in which the Defense Counsel concurred in Trial Counsel's request.

Based on the representations by the Trial Counsel, the military judge ordered the sec-

---

1. R.C.M. 802. Conferences.

(a) In general. After referral, the military judge may, upon request of any party or sua sponte, order one or more conferences with the parties to consider such matters as will promote a fair and expeditious trial.

ond R.C.M. 706 evaluation.[2] In his "Essential Findings and Ruling on Speedy Trial Motion" he stated that the deciding factors in ordering a second R.C.M. 706 evaluation were: "(1) the trial counsel's representations that the information concerning the accused's claims to be an agent of various other government agencies had not been brought to the attention of the initial R.C.M. 706 Board and (2) *both* counsel's representations that the *actual* examination which formed the basis for the first R.C.M. 706 report (Def.Ex. B) had only lasted 2–3 hours." Appellate Exhibit XL at page 2. [Emphasis appears in the original.] He went on to say "[t]he basis for continuing my order was that the prior evaluation was not trustworthy and that a more thorough evaluation would serve the ends of justice." Appellate Exhibit XL at page 2.

The first evidence was presented on the merits 123 days after the Appellant was ordered into pretrial confinement on 6 June 1990. The Appellant moved for dismissal of all charges based upon a denial of his right to a speedy trial. R.C.M. 707[3] requires that an accused be brought to trial within 120 days after the imposition of restriction in lieu of arrest, or pretrial confinement pursuant to R.C.M. 304(a). In addition, R.C.M. 707(d) requires that immediate steps shall be taken to bring to trial an accused in pretrial arrest or confinement under R.C.M. 304 or 305. It also provides that no accused shall be held in pretrial arrest or confinement in excess of 90 days. If an accused is held in pretrial confinement beyond 90 days (not counting certain deductible periods), a presumption arises that the accused's right to a speedy trial has been violated. *U.S. v. Burton*, 21 USCMA 112, 44 CMR 166 (1971). Certain periods are excluded from the Government's accountability when calculating the 90 days under R.C.M. 707(d). The military judge took evidence on the motion and made essential findings. The military judge denied the Appellant's motion for dismissal after concluding that four periods of delay, including a 29–day delay associated with a second R.C.M. 706 evaluation, were excluded from the Government's accountability.[4]

Assignment of Error I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED, BY EXCLUDING FROM GOVERNMENT SPEEDY TRIAL ACCOUNTABILITY THE UNREASONABLE DELAY CREATED BY A SECOND R.C.M. 706 EVALUATION THAT WAS A RESULT OF THE GOVERNMENT'S FAILURE TO ADEQUATELY CONDUCT THE INITIAL R.C.M. 706 EVALUATION.

There are two aspects to the ordering of the second R.C.M. 706 examination. The first is whether the military judge acted properly in ordering the second examination. The second is whether the Government should be held accountable for the 29–day delay that occurred while the examination was conducted and the board's report was filed.

The Appellant focused this appeal on the latter aspect and argues that the military judge committed prejudicial error by failing to hold the Government accountable for its negligence in conducting the first R.C.M. 706 examination without providing the medical board all relevant information in the possession of the Government. Before discussing that issue, we will dispose of any doubt concerning the first aspect of this issue.

---

2. ".... The military judge may order a mental examination of the accused regardless of any earlier determination by the convening authority." R.C.M. 706(b)(2).

3. R.C.M. 707 was changed by Change No. 5 to the M.C.M. on 27 June 1991. However, since this case was tried before that change was in effect, all references to R.C.M.s are to the R.C.M. in effect on the date of trial.

4. The military judge ruled that the following were excluded from Government accountability: 1. The first R.C.M. 706 examination 5–12 March 1990, 8 days; 2. A defense requested delay in the Article 32 Investigation 17–26 March 1990, 8 days; 3. A defense requested delay 4–7 May 1990, 3 days; and 4. The second R.C.M. 706 examination 7 May–4 June 1990, 29 days. "Essential Findings and Ruling on Speedy Trial Motion," Appellate Exhibit XL.

■ "[T]he question of whether another examination was necessary was a matter within the discretion of the military judge." *U.S. v. Frederick*, 3 M.J. 230, 232–233 (CMA 1977). This Court is satisfied that the military judge did not abuse his discretion by ordering a second R.C.M. 706 examination. The judge conducted a full inquiry into the necessity for a second sanity board. His ruling is supported by the evidence on the record. His ruling was well within his discretion, and we find he did not abuse that discretion.

The issue raised by the Appellant is not one concerning the appropriateness of the judge's ruling, but rather whether the Government should be charged for the 29–day delay resulting from the second R.C.M. 706 examination. The military judge ruled that the 29–day delay should be excluded from the Government's accountability. The Appellant is asking us to overrule the military judge and charge the delay to the Government due to its negligence by failing to make certain information available to the first R.C.M. 706 board.

The military judge held the Government accountable for 74 days of delay under the Speedy Trial Rule (R.C.M. 707(d)). If the Appellant's argument prevails, 29 additional days would be added to the Government's accountability bringing the total to 103 days thereby violating the R.C.M. 707(d) 90–day rule.

At trial it became clear that, although the Trial Counsel believed the information provided to the military judge at the R.C.M. 802 Conferences to be new, a Government investigator had learned of these incidents as early as 13 or 14 February 1990. Also the reference to the C.I.A. was found to be a reference to the Culinary Institute of America, not the Central Intelligence Agency.

Despite the fact that agents of the Government knew of these incidents and they were not reported to the first R.C.M. 706 board, the military judge found "that the government did not act in bad faith in failing to inform the initial R.C.M. 706 Board about the accused's claimed involvement with other government agencies or about the two incidents described (Threats and 'drawing down') in Para. 2 of App.Exh. VII." Appellate Exhibit XL at page 3. He went on to say "I also find that the government did not act in bad faith in misinterpreting the information it received about the 'CIA' from then SSC Bernard." Appellate Exhibit XL at page 3.

As far as this Court can determine, there are no established standards for what must be presented to a board conducting an R.C.M. 706 evaluation. Moreover, we have found no cases on the precise issue before this Court: whether there are exceptions to the R.C.M. 707(c)(1)(A) mandate requiring exclusion from speedy trial computation of delay resulting from examination into the mental capacity or responsibility of an accused and, if there are such exceptions, under what circumstances should they apply. In other words, when, if ever, should the Government be held accountable for the delay resulting from an R.C.M. 706 mental evaluation of the accused?

■ While no cases have been found directly on point, there is language in *U.S. v. Tebsherany*, 32 M.J. 351 (CMA 1991) which offers guidance. That case dealt with a speedy trial issue and the accountability for delay requested by the defense. When determining whether the requirement for trial within 120 days has been met, R.C.M. 707(c)(3) calls for exclusion of defense requested delay in the same manner as delay from mental examination under R.C.M. 707(c)(1)(A).

Despite that provision, Judge Cox, in *U.S. v. Tebsherany*, supra, points to at least one instance when defense requested delay may be included in the 120 days for which the Government is accountable:

> If the Government interferes with discovery or *acts in bad faith* to preclude defense counsel's preparation for ... [an Article 32 investigation] proceeding, an accused would be deprived of his right to effective representation. From this, it would follow that time requested by counsel to examine material not disclosed until the pretrial investigation might, *under facts showing bad faith*, be charged

to the United States in accounting for pretrial delay. (Emphasis added)

Here, the Appellant has asked this Court to take a giant leap beyond that contemplated in *U.S. v. Tebsherany,* supra, citing as authority language in *U.S. v. Longhofer,* 29 M.J. 22, 27 (CMA 1989), *U.S. v. Carlisle,* 25 M.J. 426, 428 (CMA 1988) and *U.S. v. Cherok,* 22 M.J. 438, 440 (CMA 1986). Appellant argues that negligence rather than bad faith on the part of the Government should require charging the Government with the delay from the second mental examination board. Appellant asserts that information used as a basis for requesting the second R.C.M. 706 board was known by Government agents at the time of the first examination and should have been transmitted to that first board. Negligence in not providing that known information to the first board and the negligent manner in which the first examination was conducted should shift accountability for delay to the Government, according to Appellant.

We need not reach the question whether there was, in fact, negligence on the part of the Government because we do not believe that negligence is the proper standard for assessing whether delay normally excluded from speedy trial computation should be charged to the Government. *U.S. v. Tebsherany,* supra, suggests a "bad faith" standard for such matters, and we agree with that approach. That, in fact, was the standard the trial judge applied when he made his findings.

Accordingly, we reject the argument that this Court should establish a "negligence" standard for the information that must be provided to a R.C.M. 706 Board. We find that the military judge's use of "bad faith," as the standard to be applied to the Government in this case, appropriate for measuring the Government's actions when providing information to a board convened under R.C.M. 706.

■ As a separate matter, the Discussion section, following the R.C.M. 707(d) 90–day confinement provision, refers to judicial decisions holding that a presumption of speedy trial violation arises when an accused has been in pretrial confinement for more than 90 days. This is based on the language found in *U.S. v. Burton,* supra. Our reading of R.C.M. 707(d) in conjunction with *U.S. v. Burton, supra,* leads us to conclude that a two-part analysis must be done when analyzing delays in bringing an accused to trial who was in pretrial confinement for longer than 90 days. We must be satisfied that the delays excluded from the Government's accountability were properly excluded under R.C.M. 707(d) *and* that the Government has overcome its heavy burden under *U.S. v. Burton, supra,* to show that the accused's right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810 was not violated. The discussion of that rule indicates that *reasonable* delays for examinations into mental capacity or mental responsibility ordinarily are not included in the 90–day presumption. No elaboration of the term reasonable is provided—whether it relates only to length of delay or is broad enough to encompass reasonableness in ordering the examination. Under either interpretation, we find the delay for the second examination was reasonable. It was not unduly long, and the judge had a reasonable basis for ordering it.

■ We find that the military judge did not abuse his discretion when he did not charge the 29–day delay for the second R.C.M. 706 Board to the Government. We are satisfied by that ruling that the Government's burden under *U.S. v. Burton, supra,* was also met. His ruling on the Speedy Trial Motion was proper and will not be reversed. Based on that ruling, the Appellant was brought to trial within the time limits prescribed by law.

This Court commends the participants in this court-martial for the manner in which they fulfilled the obligation to ensure that an accused who may not be competent to stand trial or may not be mentally responsible for the offenses for which charged does not stand trial. The record shows that the trial counsel, defense counsel and military judge all had doubts about the Appellant's mental condition and took the appropriate steps required by the UCMJ to

ensure that he was fully evaluated prior to trial.

Assignment of Error III

CHARGE II AND THE SPECIFICATIONS THEREUNDER ARE MULTIPLICIOUS FOR FINDINGS WITH SPECIFICATIONS 1 AND 2 OF CHARGE I.

Although this Court, in an earlier decision (*U.S. v. Howard*, 24 M.J. 897 (CGCMR 1987)), exhaustively examined multiplicity, this case does not require that kind of exhaustive analysis. The basic rule for multiplicity laid out in *U.S. v. Baker*, 14 M.J. 361 (CMA 1983) will suffice. The U.S. Court of Military Appeals has held that "[i]n cases in which application of the *Baker* standard has compelled a conclusion that findings were multiplicious, we have viewed as plain error the failure of the trial or intermediate appellate courts to dismiss the included offenses. In such instances, we have not hesitated to grant relief, even though the defense had not complained of multipliciousness at trial or on appeal." *U.S. v. Holt*, 16 M.J. 393, 394 (CMA 1983). In *Holt* the Court went on to say "[h]owever, we do not believe that, in testing for multipliciousness, we need go beyond the language of the specifications on which the case is tried." *Id.* at 394.

■ The Appellant raises for the first time on appeal the issue of multiplicity for findings of Specifications 1 and 2 of Charges I and II. We have examined the specifications to determine if, after applying the *Baker* Rule, we are compelled to make the conclusion that the findings were multiplicious. Our answer is no. The specifications under Charge I allege assaults with intent to commit murder against named individuals with a dangerous weapon by firing it through a window. The specifications were modified by the

military judge during his findings to just assaults with a dangerous weapon.

The specifications under Charge II allege that on two occasions the Appellant without proper authority willfully damaged, by gunfire, military property of the United States.

The elements of proof of assault with a dangerous weapon are: (1) That the accused attempted to do bodily harm to a certain person; (2) That the accused did so with a certain weapon; (3) That the attempt was done with unlawful force or violence; (4) That the weapon was used in a manner likely to produce death or grievous bodily harm; and (5) That the weapon was a loaded firearm. Manual for Courts–Martial (M.C.M.) paragraph 54b(4)(a).

The elements of proof for destruction of military property are: (1) That the accused, without proper authority, damaged certain property; (2) That the property was military property of the United States; (3) That the damage was willfully caused by the accused; and (4) That the damage was of a certain amount. M.C.M. paragraph 32d(2).

The specifications under Charge I allege crimes against a person and those under Charge II allege crimes against property. The elements of proof of the two offenses are different. The only commonality between them is that a firearm was used in the commission of each offense. This Court does not feel compelled by the language of the specifications to draw the conclusion that the specifications under Charges I and II are multiplicious for findings. Therefore, Assignment of Error III is rejected.

Assignments of Error II and IV[5] are without merit and are rejected for the reasons stated in *U.S. v. Smith*, 27 M.J. 242, 248 (CMA 1988) and *U.S. v. Ezell*, 6 M.J. 307, 327 (CMA 1979) (Fletcher, C.J. concur-

---

5. The Appellant's Assignments of Error II and IV were: II. THE MILITARY JUDGE DENIED APPELLANT DUE PROCESS OF LAW BY DENYING APPELLANT'S MOTION FOR TRIAL BY UNANIMOUS JURY; and IV. THE CONVENING AUTHORITY WAS PROVIDED A DE-

FECTIVE 1106 RECOMMENDATION BY A LAW SPECIALIST WHO DID NOT HAVE PROPER AUTHORITY, IN ACCORDANCE WITH THE UCMJ, AND WHO WAS FURTHER DISQUALIFIED BY CONFLICT.

ring) with respect to Assignment of Error II and *U.S. v. Stewart*, 29 M.J. 621 (CGCMR 1989) and *U.S. v. Payne*, 22 M.J. 592 (CGCMR 1986) with respect to Assignment of Error IV.

Based on the entire record, the findings and sentence are correct in law and fact and should be approved. Accordingly, the findings and sentence, as approved below, are affirmed.

Chief Judge BAUM and Judge BASTEK concur.