UNITED STATES, Appellee,

v.

Michael J. CARPENTER, Subsistence Specialist Second Class U.S. Coast Guard, Appellant.

No. 67,757.

CMR No. 968.

U.S. Court of Military Appeals.

Argued March 2, 1993.

Decided Aug. 3, 1993.

For Appellant: *Lieutenant Commander Allen Lotz* (argued); *Lieutenant Commander G. Arthur Robbins.*

For Appellee: *Lieutenant Commander Charles J. Bennardini* (argued).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of assault with a dangerous weapon, one specification of impersonating an agent of superior authority, two specifications of willfully damaging military property, and one specifica-

tion of dereliction of duty, in violation of Articles 128, 134, 108, and 92, Uniform Code of Military Justice, 10 USC §§ 928, 934, 908, and 892, respectively. The approved sentence provides for a dishonorable discharge, confinement for 15 months, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence. 34 MJ 681 (1992).

We granted review of the following issues:

## I

WHETHER THE GENERAL COURT-MARTIAL MILITARY JUDGE AND THE JUDGES OF THE COURT OF MILITARY REVIEW WERE APPOINTED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

## II

WHETHER THE ASSIGNMENT OF MILITARY APPELLATE JUDGES TO SERVE ON THE COAST GUARD COURT OF MILITARY REVIEW AS A MERE COLLATERAL DUTY COMPLIES WITH THE DUE PROCESS REQUIREMENTS OF ARTICLE 66, UCMJ.

## III

WHETHER THE COURT OF MILITARY REVIEW ERRED WHEN IT CONCLUDED THAT THE GOVERNMENT SHOULD NOT BE HELD ACCOUNTABLE FOR THE DELAY CAUSED BY A SECOND RCM 706 INQUIRY CONDUCTED TO REMEDY GOVERNMENT ACKNOWLEDGED FAILURE TO PERFORM AN ADEQUATE RCM 706 INQUIRY IN THE FIRST INSTANCE.

### Appointment of Military Judges

Appellant elected to be tried by Captain Douglas A. Smith, United States Coast Guard, a full-time military judge designated, certified, and detailed in accordance with Article 26, UCMJ, 10 USC § 826. After appellant was convicted and sentenced, his case was reviewed by the Court of Military Review, composed of Chief Judge Baum, the full-time civilian Chief Judge of the Coast Guard Court of Military Review, and two Coast Guard captains serving as part-time appellate military judges in addition to their other legal duties. Chief Judge Baum is a retired Navy captain who served as an appellate military judge while on active duty.

We held in *United States v. Weiss*, 36 MJ 224, 226–27 (1992), *cert. granted*, —— U.S. ——, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993), that judicial duties must be performed by "Officers of the United States." For the reasons set out in *Weiss*, we hold that the military judge who tried and sentenced appellant and the two Coast Guard officers who sat as members of the Court of Military Review were appointed in a manner consistent with the Appointments Clause of the Constitution, art. II, § 2, ¶ 2, cl. 2. Regarding the appointment of the Chief Judge, we reserved judgment in *Weiss* on the question "whether Congress inadvertently exceeded its authority by vesting the powers of an 'Officer of the United States' in civilians who had not been appointed in accordance with the Appointments Clause." 36 MJ at 233.

Appellant's case presents three questions left unanswered in *Weiss:* (1) Are appellate military judges of a Court of Military Review "principal" officers, who must be appointed by the President and confirmed by the Senate, or "inferior officers," who may be appointed by the President alone, a Department Head, or a Court of Law? (2) Does the Appointments Clause require that a retired military officer, who has not been recalled to active duty, receive a new appointment to sit as a member of a Court of Military Review? and (3) If the Chief Judge of the Coast Guard Court of Military Review was not appointed in accordance with the Appointments Clause, is the decision of that court in appellant's case valid?

The Appointments Clause distinguishes between "principal" officers, although it does not use that term, and "inferior officers," which are mentioned expressly. *See*

*Freytag v. Commissioner of Internal Revenue,* — U.S. —, — – —, 111 S.Ct. 2631, 2641–42, 115 L.Ed.2d 764 (1991). The distinction between a "principal" and an "inferior" officer is not necessarily founded in the officer's level or scope of responsibility but, rather, in the manner of appointment. For "principal" officers, the Appointments Clause divides the power to appoint between the President and the Senate, requiring both nomination by the President and confirmation by the Senate as preconditions to appointment. *Buckley v. Valeo,* 424 U.S. 1, 132, 96 S.Ct. 612, 688, 46 L.Ed.2d 659 (1976). The Clause expressly applies only to "Ambassadors, other public Ministers and Consuls, [and] Judges of the supreme Court." U.S. Const., art. II, § 2, ¶ 2, cl. 2. Congress has the constitutional power to decide who are otherwise "principal" officers. If Congress chooses not to allow the President, the head of a department, or a court of law to appoint an officer without Senate confirmation, then that officer remains a "principal" officer in the residual category of "all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by law." If Congress allows the President, the head of a department, or a court of law to appoint certain officers without Senate confirmation, then those officers are "inferior officers." *Buckley v. Valeo,* 424 U.S. at 132, 96 S.Ct. at 688.

■ Congress has authorized the Secretary of Transportation to "appoint ... officers and employees of the Department of Transportation," of which the Coast Guard is a part (14 USC § 1), without Senate confirmation. 49 USC § 323. The Secretary of Transportation is the head of a "department" as that term is used in the Appointments Clause, since he is the head of one of the cabinet-level executive departments. *See* 5 USC § 101; *Freytag v. C.I.R.,* — U.S. at —, 111 S.Ct. at 2643, 115 L.Ed.2d at 785. Since Congress has

expressly delegated the appointment of "officers" within the Department of Transportation to the Secretary of Transportation, the Appointments Clause would be satisfied if the Secretary of Transportation appointed the judges of the Coast Guard Court of Military Review.[1]

■ At the time appellant's case was decided, judges of the Coast Guard Court of Military Review were appointed by the General Counsel, Department of Transportation, who is also the Judge Advocate General for the United States Coast Guard. *See United States v. Claxton,* 32 MJ 159, 160 n. * (CMA 1991). In view of 5 USC § 101, the General Counsel is not a department head, so appointment by him does not satisfy the Appointments Clause.

■ The Government argues that the General Counsel acted as delegee of the Secretary of Transportation in appointing the judges of the Coast Guard Court of Military Review. We reject that argument as inconsistent with the intent of the framers of the Constitution to prevent "the diffusion of the appointment power." *Freytag v. C.I.R.,* — U.S. at —, 111 S.Ct. at 2638, 115 L.Ed.2d at 779; *see United States v. Weiss,* 36 MJ at 226. Delegation of the power to appoint "inferior officers" to the General Counsel would violate the Appointments Clause, because "the Constitution limits congressional discretion to vest power to appoint 'inferior officers' to three sources: the President alone, the Heads of Departments, and 'the Courts of Law.'" *Freytag v. C.I.R,* — U.S. at —, 111 S.Ct. at 2638, 115 L.Ed.2d at 779. Accordingly, we hold that appointment of the Chief Judge of the Coast Guard Court of Military Review by the General Counsel of the Department of Transportation does not satisfy the Appointments Clause.

■ The Government argues that, because the Chief Judge of the Coast Guard Court of Military Review is a retired Navy

---

1. During oral argument we were advised by counsel that the Secretary of Transportation, a department head within the meaning of the Appointments Clause, *see* 37 MJ at 293, appoint- ed all members of the Court of Military Review on January 15, 1993, fully complying with the Appointments Clause as of that date. *See* Appendix.

captain, he is already an Officer of the United States by virtue of his military commission, so he does not need a second judicial appointment to serve as an appellate military judge. *See United States v. Prive*, 35 MJ 569, 579 (CGCMR 1992) (Baum, C.J., concurring). There are two flaws in this argument which cause us to reject it. First, Chief Judge Baum is not acting in his capacity as a Navy captain when he sits as an appellate military judge for the Coast Guard. The Directory of Coast Guard Lawyers and Billets, submitted with appellant's pleadings, reflects that the billet for the Chief Judge is a civilian billet. Chief Judge Baum is paid as a civilian employee (GS–15), not as a Navy captain, for his service as Chief Judge. When retired officers are needed to perform military duties, they are recalled to active duty and paid at the rate provided for their military grade. *See* 10 USC § 688. Chief Judge Baum was not recalled to active duty to serve on the Court of Military Review; he was appointed as a civilian to a civilian office. In short, he is not discharging the office of captain, United States Navy, but that of a senior civilian within the Coast Guard.

■ Second, Chief Judge Baum's duties as Chief Judge are not "germane" to the duties of a retired Navy officer. A retired military officer is an Officer of the United States. *See McCarty v. McCarty*, 453 U.S. 210, 221–22, 101 S.Ct. 2728, 2735–36, 69 L.Ed.2d 589 (1981); *United States v. Tyler*, 105 U.S. 244, 26 L.Ed. 985 (1882); *Flower v. United States*, 31 Ct.Cl. 35 (1895). Nevertheless, a retired officer has no duties; he is in the status of an officer "placed on waiting orders." *Flower v. United States*, *supra* at 41; *see Gibson v. United States*, 47 Ct.Cl. 554 (1912). Since Chief Judge Baum has no duties as a retired officer, the "germane duties" analysis of *Weiss* and *Shoemaker v. United States*, 147 U.S. 282, 301, 13 S.Ct. 361, 391, 37 L.Ed. 170 (1893), cannot apply to him.

■ Finally, the Government argues that Chief Judge Baum is not a "civilian"

because Article 142(b), UCMJ, 10 USC § 942(b), requiring that judges of the Court of Military Appeals be appointed "from civilian life," specifically excludes certain retired military officers (including Chief Judge Baum) from the definition of "civilian life," *see* Art. 142(b)(4). While Chief Judge Baum may not be a "civilian" for purposes of appointment to the Court of Military Appeals, we regard that definition as limited to Article 142, which was intended to ensure that the Court of Military Appeals be an independent civilian court unencumbered by ties to any of the military services.

Based on the foregoing analysis, we hold that Chief Judge Baum's status as a retired military officer does not satisfy the Appointments Clause.

■ We next turn to the question of the effect of the Chief Judge's defective appointment. Just as the acts of the federal election commissioners were accorded *de facto* validity in *Buckley v. Valeo*, 424 U.S. at 142, 96 S.Ct. at 693, we hold that the judicial acts of the Chief Judge are entitled to *de facto* validity. Accordingly, we hold that the decision of the Court of Military Review in this case is valid, notwithstanding the defective appointment of the Chief Judge.

### Part–Time Judges

Appellant contends that he was denied due process of law because two appellate military judges of the panel which decided his case were not assigned to the Court of Military Review as a primary duty. The Coast Guard Organization Manual, COMDTINST M5400.7C (7 Dec.1990), provides:

> The Court of Military Review, established under Article 66, UCMJ, by the Judge Advocate General (General Counsel DOT) is composed of the Chief Judge and not less than two additional appellate military judges. The judges may be commissioned officers or civilians. The Coast Guard Court of Military Review is normally composed of one panel of five appellate judges. All but the Chief

Judge are normally Division Chiefs who serve on the court as a collateral duty. COMDTINST M5400.7C, *supra* at 2.7.8.

Appellant bases his argument on two decisions from our Court which held that it was jurisdictional error to detail military judges to general courts-martial whose primary duty was other than judicial duties. *United States v. Beckermann,* 27 MJ 334 (CMA 1989); *United States v. Moorehead,* 20 USCMA 574, 44 CMR 4 (1971). Those decisions are distinguishable from appellant's case because they were based on Article 26(c) of the Code which provides:

A commissioned officer who is certified to be qualified for duty as a military judge of a general court-martial may perform such duties only when he is assigned and directly responsible to the Judge Advocate General, or his designee, of the armed force of which the military judge is a member and may perform duties of a judicial or nonjudicial nature other than those relating to his primary duty as a military judge of a general court-martial when such duties are assigned to him by or with the approval of that Judge Advocate General or his designee.

▮▮▮▮ No such or similar provision is found in Article 66, UCMJ, 10 USC § 866, pertaining to appellate military judges assigned to a Court of Military Review. We have found nothing in the legislative history of Article 66 indicating that Congress intended that the duty restrictions of Article 26(c) be incorporated in Article 66. We decided *Moorehead* on the basis of a statutory requirement, not constitutional due process. The purpose of the statutory requirement was explained in *Beckermann:* "to assure the independence and the professionalism of the judges who presided over general courts-martial." 27 MJ at 338. The concern of Congress in enacting Article 26(c) was to remove trial judges from the command of convening authorities and commanders in the field and place them under the direct supervision and control of the Judge Advocate General or his designee. *Id.* In *United States v. Graf,*

35 MJ 450 (CMA 1992), *cert. granted sub nom. Weiss v. United States, supra (see* 37 MJ at 293), we grappled with the requirement for judicial independence at both the trial and appellate levels, and we concluded that, even without a fixed term of office, both trial and appellate military judges enjoy institutional protections sufficient to guarantee their judicial independence and thereby satisfy constitutional due process. The Coast Guard Organization Manual provides institutional independence by requiring that only division chiefs in the office of the Chief Counsel, not subject to the control of convening authorities in the field, be assigned collateral duty as appellate military judges. 37 MJ at 295. Accordingly, we are satisfied that the appellate military judges who decided appellant's case were sufficiently independent to satisfy the requirements of constitutional due process.

We hold that, absent a statutory provision such as that in Article 26(c), there is no constitutional or statutory requirement that appellate military judges perform only judicial duties or that they serve as full-time judges. Whether such a requirement would be desirable is a question for Congress, not this Court. *See United States v. Weiss,* 36 MJ at 234.

### Speedy Trial

At trial, appellant moved to dismiss the charges for lack of speedy trial. At issue is the period from May 7 to June 4, 1990, during which a second inquiry into appellant's mental capacity to stand trial was conducted, pursuant to the order of the military judge. If that period is charged to the Government, appellant is entitled to dismissal of the charges in accordance with RCM 707(d), Manual for Courts–Martial, United States, 1984.

Appellant was placed in pretrial confinement on February 3, 1990. His commander ordered a one-member sanity board on the following grounds:

SS2 Carpenter is charged with serious UCMJ offenses alleging willful discharge of a firearm on two separate occasions

into living spaces, which placed the inhabitants in serious physical danger. On one occasion, the accused discharged a .22 caliber rife [sic] into the communications spaces inhabited by the Coast Guard Station Brant Point watchstanders. In the other instance, SS2 Carpenter allegedly fired the same .22 caliber rifle with a scope through the bathroom window of a government owned housing unit, which was then occupied by a Coast Guard dependent wife. In the course of the investigation of these instances, SS2 Carpenter supposedly falsely portrayed himself as a Coast Guard Intelligence Agent to the local police so that he could examine any evidence that had been collected. Additionally, there is information which indicates that SS2 Carpenter had received psychological testing and evaluation as a result of his response to stressful situations in the past. Due to the seriousness of the charges and the apparent lack of a discernible motive on the part of the accused, an examination into the accused's mental condition is deemed warranted.

Appellant was examined by the one-member sanity board on March 5, 1990. On March 12 the sanity board issued its report finding appellant competent to stand trial. The charges were referred to a general court-martial on April 24.

On May 3, 1990, trial counsel informed defense counsel that he believed that appellant was not competent to stand trial. Trial counsel based his belief on information that appellant was continuing to claim that he was a United States Treasury Agent and that appellant claimed to have been associated with the "CIA," so he might be suffering from a "grandiose delusional disorder." *See* 34 MJ at 682.

Both trial counsel and defense counsel visited the convening authority to discuss the possibility of alternate disposition of the case if appellant was not competent. The convening authority suggested raising the issue with the military judge.

At a conference under RCM 802 on the same day, trial counsel requested the military judge to order a new sanity board. Defense counsel indicated that the original sanity board had been "cursory and inadequate," that he did not oppose the motion for a new sanity board, but that he could not request it because "it would strain his relationship with his client." On May 4 the military judge ordered a second sanity board. At a later RCM 802 conference, appellant objected to any further delays of his case and informed the military judge that he disagreed with his counsel's decision not to oppose the request for a new sanity board.

On May 11, 1990, defense counsel learned that appellant's references to "CIA" were to the Culinary Institute of America, not the Central Intelligence Agency. Counsel requested another RCM 802 conference to inform the military judge that he no longer considered a second sanity board necessary and to request that the charges be dismissed for a violation of RCM 707 or that "trial proceed immediately." Trial counsel argued that a second sanity board was still necessary because appellant "had been misrepresenting himself as a treasury agent for the past 8 years" and had engaged in "other bizarre behavior," including drawing a weapon on a fellow crew member and threatening a local civilian police officer. The military judge informed both counsel that he "would NOT entertain" a motion to dismiss in an RCM 802 conference but that he "remained convinced" of the need for a new sanity board.

Arrangements were made to have appellant evaluated by a three-member sanity board at Lackland Air Force Base, located in San Antonio, Texas. On May 14 appellant arrived at Lackland for an estimated 2–week period of in-patient evaluation. After "extensive observation, psychological testing, an electroencephalogram, and a computed tomogram (CT scan) of his head" as well as a personal interview, the sanity board determined that appellant had "sufficient mental capacity" to stand trial. On May 25 he was returned to his home duty station in Nantucket, Massachusetts.

When the court-martial convened on June 4, 1990, defense counsel moved to dismiss the charges for violation of RCM 707. As the basis for his argument that the time required for the second sanity board should be charged to the Government, defense counsel argued that the Government had negligently misinterpreted appellant's reference to the "CIA" and that the two instances of bizarre behavior used to justify the second sanity board were known to the Government in February, well before the first sanity board, but were not made known to that sanity board. Defense counsel did not assert "bad faith" on the part of the Government.

The military judge denied the motion to dismiss. In his written findings of fact and ruling on the motion, the military judge stated that his bases for ordering a second sanity board were:

> (1) the trial counsel's representations that the information concerning the accused's claims to be an agent of various other government agencies had not been brought to the attention of the initial RCM 706 Board and (2) *both* counsel's representations that the *actual* examination which formed the basis for the first RCM 706 report (Def.Ex.B) had only lasted 2–3 hours.

Regarding the mistaken references to the "CIA," the military judge stated:

> [T]he defense counsel's representation on 11 May 1990 that the Government's mistaken belief that the accused had represented himself to be a CIA agent eight years ago was not enough to convince me that a further examination was no longer necessary. I reached this conclusion because I never specifically relied on that piece of information in making my original decision to order the new evaluation. The basis for continuing my order was that the prior evaluation was not trustworthy and that a more thorough evaluation would serve the ends of justice.

The military judge ruled that the "entire period" required for the second sanity board, from May 7 until June 4, 1990, was excludable from the time chargeable to the Government. By excluding that period from the time chargeable to the Government along with a total of 19 days which are not challenged, the military judge charged the Government with responsibility for only 74 of the 122 days of delay.

Two issues are involved: (1) Did the military judge abuse his discretion by ordering a second sanity board? and (2) was the time required to conduct the second sanity board properly excluded from the time chargeable to the Government?

 The question whether additional psychiatric examination is necessary rests within the discretion of the military judge and is reviewable only for abuse of discretion. *United States v. Frederick*, 3 MJ 230, 232–33 (CMA 1977). We hold that the military judge did not abuse his discretion by ordering a second sanity board in this case. Both counsel regarded the first sanity board as cursory and inadequate. Both counsel informed the military judge that the first sanity board had not considered significant relevant information. Under the circumstances, it was well within the limits of the military judge's discretion to order a second sanity board.

Turning to the second issue, we note that RCM 707(d) and (e), prior to that Rule's amendment on July 6, 1991, provided that failure to bring an accused held in pretrial confinement to trial within 90 days "shall result in dismissal of the affected charges upon timely motion by the accused." RCM 707(c)(1)(A) specifically excluded from the 90–day period any delays resulting from an "examination into the mental capacity or responsibility of the accused." Nevertheless, as we stated in *United States v. Longhofer*, 29 MJ 22, 27 (CMA 1989), "[I]t cannot be said that the mere happening of any of the events listed in RCM 707(c)(1)–(8) results in an *automatic* exclusion, because all of them contemplate that the length of time excluded will be *reasonable*."

 Appellant argues that the delay attributable to the second sanity board is not

reasonable because the Government was negligent. *See United States v. Longhofer*, 29 MJ at 29 (exclusion is inapplicable when the Government has not been "reasonably diligent" in pursuing pretrial matters). He argues that a second sanity board would not have been necessary if the Government had provided all relevant information to the first sanity board. The Court of Military Review rejected the "negligence" standard and decided the speedy-trial issue on a "bad-faith" standard. 34 MJ at 685. We hold that the correct standard is neither negligence nor bad faith; the correct standard under *Longhofer* is reasonableness.

 The *Longhofer* requirement that excludable periods of time be "reasonable" does not necessarily require mistake-free processing. Nevertheless, evidence of either negligence or bad faith is relevant to the extent that it proves whether the event in question was accomplished in a reasonable period of time. The parties do not dispute that the second sanity board in this case was conducted in a reasonable period of time. Having reviewed the record, we hold that the period from May 7 to June 4 was a reasonable time to arrange for an extensive evaluation in a facility operated by a sister service in a distant place. Accordingly, we hold that the Court of Military Review did not err in holding that the Government should not be held accountable for the delay caused by the second sanity board.

Assuming *arguendo* that the time consumed by the first sanity board was "unreasonable" because the board was not conducted properly, adding the period from March 5 to 12 to the time chargeable to the Government still leaves the total charge-

able time well below 90 days. Accordingly, we hold that appellant was not entitled to dismissal of the charges for a violation of RCM 707(d).

 We have also considered whether appellant is entitled to dismissal of the charges under the more stringent requirements of *United States v. Burton*, 21 USCMA 112, 44 CMR 166 (1971), as modified by *United States v. Driver*, 23 USCMA 243, 49 CMR 376 (1974). The record does not reflect whether the first psychiatric examination was requested by the defense or was simply ordered by the command. In either event, the delay associated with that examination is not chargeable to the Government. *See United States v. McClain*, 1 MJ 60, 63 (CMA 1975) (psychiatric examination requested by pretrial investigating officer not chargeable to Government). The second psychiatric examination was ordered by the military judge, not because of the mistaken references to the "CIA" but because he was convinced that appellant's behavior warranted a more extensive evaluation. This delay likewise is not chargeable to the Government. *Id.* The delay associated with the two psychiatric examinations, when added to earlier delays requested by the defense, brings the time chargeable to the Government below 90 days. Therefore, the *Burton* presumption of a violation of Article 10, UCMJ, 10 USC § 810, was not triggered in this case.[2]

### Decision

The decision of the United States Coast Guard Court of Military Review is affirmed.

Judge COX concurs.

---

2. Having found no *Burton* violation, we need not decide whether RCM 707, Manual for Courts–Martial, United States, 1984, superseded

*Burton*. *See United States v. Kossman*, 37 MJ 232 (CMA 1993) (raising issue whether RCM 707 overruled *Burton* ).

APPENDIX

# Memorandum

**U.S. Department of Transportation**
Office of the Secretary
of Transportation

---

**Subject** APPOINTMENT OF APPELLATE MILITARY JUDGES TO THE COAST GUARD COURT OF MILITARY REVIEW

**Date** January 15, 1993

**From** The Secretary

**Reply to Attn of**

**To** Chief Judge, U.S. Coast Guard Court of Military Review

1. The assignment of appellate military judges to the Coast Guard Court of Military Review, as reflected in the General Counsel's memo of April 20, 1992, is adopted this date as judicial appointments of my own. Those judges presently assigned and appointed by me are:

Chief Judge
Joseph H. Baum

Judges
Alfred F. Bridgman, Jr.
Michael C. Grace
John A. Bastek
Terrance M. Edwards

The judicial duties and powers of these judges will be as prescribed under the Uniform Code of Military Justice.

---

SULLIVAN, Chief Judge (concurring):

I agree with the principal opinion in this case, although I dissented in *United States v. Weiss*, 36 MJ 224, 240 (CMA 1992), *cert. granted*, — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). I perceive no inconsistency in this regard because of the manner in which the particular Appointments Clause, *see* 37 MJ at 293, question is resolved in this case.

CRAWFORD, Judge (concurring in part and in the result):

I wholeheartedly concur with the principal opinion concerning the discussion of part-time judges and the speedy trial issue. However, I only concur in the result as to application of the Appointments Clause, *see* 37 MJ at 293, to appellate judges. *United States v. Weiss*, 36 MJ 224, 234 (CMA 1992)

(Crawford, J., concurring in the result), *cert. granted*, — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993).

WISS, Judge (concurring in part and in the result):

As to Issue I, I concur in the result. For the reasons that I set out in my dissenting opinion in *United States v. Weiss*, 36 MJ 224, 256 (CMA 1992), *cert. granted*, — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). I believe that neither the military judge nor any of the appellate judges were properly appointed. However, I am willing to apply the *de facto*-appointee rationale of *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), to this case: Concerning the military judge and the associate judges of the Court of Military Review, the majority in *Weiss* approved their ap-

pointment, so I will consider them *de facto* appointees; as to the Chief Judge of the Court of Military Review, since he acted on this case before this Court held his appointment improper, I join in extending his appointment *de facto* validity.

Regarding Issue II, I must confess some misgivings about at least the appearance of lack of total objectivity when associate appellate judges' principal assignments are as division chiefs under the immediate supervision of the Chief Counsel, the Coast Guard's top-ranking uniformed lawyer. The unanimous opinion of this Court in *United States v. Graf,* 35 MJ 450 (CMA 1992), *cert. granted sub nom. Weiss v. United States, supra,* however, ultimately persuades me to concur in the principal opinion that due-process notions are not offended by the Coast Guard's structure of its Court of Military Review.

As to Issue III, I concur in the principal opinion's discussion and disposition of the claimed denial of speedy trial under RCM 707, Manual for Courts–Martial, United States, 1984. I concur only in the result,

* Uniform Code of Military Justice, 10 USC § 832.

however, with the disposition of the speedy-trial claim under *United States v. Burton,* 21 USCMA 112, 44 CMR 166 (1971). I do not read the Court's opinion in *United States v. McClain,* 1 MJ 60 (CMA 1975), to support a black-letter rule that a pretrial psychiatric examination is never chargeable to the Government for *Burton* purposes. The Court there took pains to make clear to the contrary:

> For the purposes of this case, and without definitively assigning to which party the period involved in a sanity inquiry is chargeable, the 18–day delay in the Article 32[*] investigation for the examination of this accused will not be considered against the Government.

*Id.* at 63. In any event, assuming that this case does give rise to the *Burton* presumption of a violation of Article 10, Uniform Code of Military Justice, 10 USC § 810, the factual circumstances fully set out in the principal opinion lead me to conclude that extraordinary circumstances accounted for not trying appellant within 90 days of his pretrial confinement so that the presumption is rebutted.