## UNITED STATES

v.

**Richard T. REED, Aviation Structural Mechanic Third Class United States Coast Guard.**

**CGCMS 24099.
Docket No. 1040.**

U.S. Coast Guard Court of Criminal Appeals.

1 Feb. 1995.

Military Judge: CAPT Lane I. McClelland, USCG.

Trial Counsel: LT Brian McTague, USCGR.

Defense Counsel: LT S.T. Ecton, JAGC, USNR.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR C.J. Bennardini, USCG.

Before Panel Four, BAUM, O'HARA, WIESE, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by special court-martial, judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: two specifications of dereliction of duty in violation of Article 92, UCMJ, 10 U.S.C.A. § 892; two specifications of signing a false official document in violation of Article 107, UCMJ, 10 U.S.C.A. § 907; two specifications of marijuana use in violation of Article 112a, UCMJ, 10 U.S.C.A. § 912a; two specifications of larceny in violation of Article 121, UCMJ, 10 U.S.C.A. § 921; one specification of making a false claim in violation of Article 132, UCMJ, 10 U.S.C.A. § 932; three specifications of dishonorable failure to pay a debt, one specification of wrongful cohabitation, one specification of

adultery, and one specification of obtaining services by false pretenses in violation of Article 134, UCMJ, 10 U.S.C.A. § 934. The judge sentenced Appellant to a bad conduct discharge, confinement for six months, reduction to pay grade E–2, and a fine of $3,732. The convening authority, unconstrained by any sentence limitation in the pretrial agreement, approved the sentence as adjudged.

Before this Court, Appellant has assigned two errors. One of those assignments summarily challenges the Court's jurisdiction because of service on the Court of civilians who, it is asserted, have not been appointed in accordance with Constitutional requirements. This assignment has been decided contrary to Appellant's position in *U.S. v. Carpenter*, 37 M.J. 291 (CMA 1993), *pet. for cert.* filed, 62 U.S.L.W. 3411 (U.S. Oct. 29, 1993) (No. 93–676). That decision is dispositive and the assignment is rejected for that reason. The other assignment will be addressed.

## I

### THAT THE STAFF JUDGE ADVOCATE'S POST–TRIAL RECOMMENDATION IS DEFICIENT IN THAT IT DOES NOT INCLUDE INFORMATION ON THE MILITARY JUDGE'S DETERMINATIONS OF MULTIPLICITY FOR SENTENCING

■ Appellant requests that the action of the convening authority be set aside and the case returned for a new post-trial recommendation and action because the staff judge advocate's recommendation did not inform the convening authority of the military judge's determination that several of the offenses were multiplicious for sentencing purposes. Citing *U.S. v. Beaudin*, 35 M.J. 385, 387–388 (CMA 1992); *U.S. v. Walsh*, 36 M.J. 666, 667 (NMCMR 1992); and *U.S. v. Schiftic*, 36 M.J. 1193, 1197 (NMCMR 1993), Appellant says that the staff judge advocate's recommendation must include such information.

To the contrary, *U.S. v. Russett*, 40 M.J. 184 (CMA 1994), cited to us as supplemental authority by the Government, makes it clear that *U.S. v. Beaudin, supra*, does not require that every multiplicity ruling be included in the staff judge advocate's recommendation. The Court of Military Appeals in *Russett*

held that the court below in that case erred when it interpreted *Beaudin* as establishing a uniform rule that the staff judge advocate's recommendation must specifically recite any sentence multiplicity determination by a judge whether or not there is an objection by the defense. The Court went on to say that: "The requirement for the SJA to comment on the multiplicity question arises when the defense counsel first raises the issue as part of the defense submission to the convening authority." Id. at 40 M.J. 186.

The defense counsel in this case did not raise the issue in any submission to the convening authority. Counsel did submit a clemency petition to the convening authority which the staff judge advocate noted in his recommendation, but that petition made no reference to the multiplicity ruling by the judge. No legal errors were raised in that petition nor was there any other submission pursuant to RCM 1105. Furthermore, the defense counsel and the accused could have objected to the omission of any reference to the judge's multiplicity rulings in the staff judge advocate's recommendation by filing a response under RCM 1106, but none was submitted. Accordingly, in light of the amplification of the holding in *U.S. v. Beaudin, supra*, provided by *U.S. v. Russett, supra*, we find that the staff judge advocate was not required to comment on the judge's multiplicity determination. Appellant's assignment of error is rejected for this reason.

In deciding this issue, we are pleased to note that a certificate of service of the staff judge advocate's recommendation, together with the defense counsel's acknowledgment of receipt, appear in the record. Their inclusion in the record has facilitated the review and disposition of this issue, thus avoiding the problems prompting remand in *U.S. v. Haire*, 40 M.J. 530 (CGCMR 1994) and *U.S. v. Leaver*, 40 M.J. 529 (CGCMR 1993).

## II

### POST–TRIAL PROCEDURE DIRECTED BY THE MILITARY JUDGE TO RESOLVE CONFLICTS IN THE RECORD BEARING ON THE PROVIDENCE OF THE PLEAS

■ As a separate matter, not commented upon in the briefs, we wish to note and

validate a procedure utilized by the military judge that allowed resolution of a conflict in the record, without reopening the trial. The judge, when reading the record for authentication purposes, discerned a contradiction between part of the accused's unsworn statement at sentencing and some of the answers to the plea-providence inquiry. In order to correct this variance, the judge, who was in Washington, D.C., first held an RCM 802 conference by telephone with the trial counsel, who was in Juneau, Alaska, and the defense counsel, who was in Bremerton, Washington. In that conference the judge disclosed the problem and posed two choices: reconvening the court or propounding written questions to the accused, with his consent, after consultation with counsel. The following is a portion of what was said in that conference:

> MJ: I see at least two choices. We could re-convene, and I could ask the Accused questions to clarify this. Or possibly I could propound some questions to him in writing. His reply would be under oath, because this is part of providency. If his reply clears it up, what we've done goes into the record and the bottom line doesn't change. If not, we have to re-convene, because providency is broken on at least the adultery specification. There may be other ways to handle this. LT Ecton, I'm not going to ask you [as defense counsel] to commit yourself at this point. You need to talk to your client.

> .    .    .    .    .

> TC: What kind of proceeding would you call this?
> MJ: I can authorize documents to be attached to the record until I authenticate it. It doesn't matter what its called, as long as we don't violate the rights of the Accused. Its questionable whether we could do this entirely by documents if the Defense objects. Also, the Accused should probably be given Article 31 rights since in theory his answers could incriminate him with regard to perjury. I don't personally suspect him of perjury, I think he just misspoke, but he reasonably could be suspected of perjury.

App. Ex. VI, p. 1

The judge explained the kind of questions she contemplated asking and determined that the defense counsel would talk to his client who was in the Alaska Command Confinement Facility at Fort Richardson, Alaska. After the conference, the judge transmitted written questions to the parties and ordered, among other things, that:

> 1.  If either party has cause why the questions in Appellate Exhibit VII, attached, should not be propounded to the accused, for him to answer in writing under oath, such answers to be attached to the record, that party shall file notice of such cause with the court, with a copy to the other party, on or before 9 August 1994. The notice shall include the basis of the objection. Failure to file such notice will not obligate the Accused to answer the questions, but if the Accused expects to decline to answer the questions, notice of same under this paragraph is encouraged. If such notice is filed, Trial Counsel shall initiate a R.C.M. 802 conference as soon as possible, to schedule an Article 39(a) session.

App. Ex. VI, p. 2.

Thereafter, another officer, substituting for the trial counsel, who was unavailable, met with the accused at the confinement facility and completed the process by obtaining the accused's written responses to the judge's questions. That officer also submitted an affidavit explaining what he had done. All documents memorializing these events were affixed to the record by the judge as appellate exhibits. They have been attached to this opinion also as appendices to fully show how the judge in this case was able to reconcile the accused's conflicting statements in a relatively simple manner not requiring travel by all parties from diverse locations for a reconvening of the court.

We continue to exhort trial judges to listen carefully to what is said by the accused at trial for inconsistencies that necessitate further inquiry into the providence of guilty pleas and to clear up those matters during the trial, entering not guilty pleas, if necessary. If something is inadvertently missed, however, and caught when authenticating the record, judges should take the necessary corrective steps, either through post-trial ses-

sions pursuant to RCM 1102, which include proceedings in revision and Article 39(a) sessions, see *U.S. v. Scaff*, 29 M.J. 60, 65–66 (CMA 1989); *U.S. v. Griffith*, 27 M.J. 42, 45–48 (CMA 1988); *U.S. v. Carr*, 18 M.J. 297, 302 (CMA 1984) and *U.S. v. Brickey*, 16 M.J. 258, 263–265 (CMA 1983), or, as here, through substitute corrective procedures that do not conflict with the Code or regulations, that do not materially prejudice an accused's substantial rights, and to which neither party objects.

We heartily endorse the steps taken by Chief Trial Judge McClelland that not only corrected the record in an expeditious and cost efficient manner, but also headed off further proceedings at a later date that may have been ordered by this or a higher court. Some years ago in *U.S. v. Solorio*, 21 M.J. 512, 522 (CGCMR 1985) we approved the judge's action attaching special findings after trial, without a reopening of the court. We believe the procedure here and the one taken in that case are in accord.

We have reviewed this record in accordance with Article 66, 10 U.S.C.A. § 366, Uniform Code of Military Justice. Upon such review, the findings and sentence are determined to be correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings and sentence, as approved below, are affirmed.

Judges O'HARA and WIESE concur.

## APPENDIX A

Appellate Exhibit VI

**SPECIAL COURT–MARTIAL
UNITED STATES COAST GUARD**

United States

v

Richard T. Reed Aviation Mechanic
Third Class U.S. Coast Guard

**RCM 802 Conference
°Memorandum
and
COURT ORDER**

This case was tried on 10 June 1994. The record has not yet been authenticated.

An R.C.M. 802 conference was held by telephone on 4 August 1994, attended by the Military Judge, CAPT L.I. McClelland, the Trial Counsel, LT McTague, and the Defense Counsel, LT Ecton. The following is not a verbatim transcript, but sets forth the substance of the conference.

MJ: As I read the record of trial in preparation for authenticating it, I found that the Accused said, in his unsworn statement during the sentencing proceedings, that Ann and he got married on December 23, 1991 by a Justice of the Peace, and on May 5, 1992 by the church. During trial I didn't catch those dates. When I read them, I thought they conflicted with other things in the case. I had the court reporter's tapes checked, and verified that that's what he said. I feel I must re-open providency and address this conflict.

MJ: I see at least two choices. We could re-convene, and I could ask the Accused questions to clarify this. Or possibly I could propound some questions to him in writing. His reply would be under oath, because this is part of providency. If his reply clears it up, what we've done goes into the record and the bottom line doesn't change. If not, we have to re-convene, because providency is broken on at least the adultery specification. There may be other ways to handle this. LT Ecton, I'm not going to ask you to commit yourself at this point. You need to talk to your client.

It was noted that there is evidence that the marriage date was December 23, 1989, through his statement in providency and the stipulation; and that a certified copy of his marriage certificate is available.

MJ: Evidence is all very well, but if the Accused didn't agree, providency of at least the guilty plea to adultery is broken. I think there are some other things that might be affected.

TC: What kind of proceeding would you call this?

MJ: I can authorize documents to be attached to the record until I authenticate it.

It doesn't matter what it's called, as long as we don't violate the rights of the Accused. It's questionable whether we could do this entirely by documents if the Defense objects. Also, the Accused should probably be given Article 31 rights since in theory his answers could incriminate him with regard to perjury. I personally don't suspect him of perjury, I think he just mis-spoke, but he reasonably could be suspected of perjury.

MJ: The questions I would ask the Accused would be along these lines: first, pointing out that in his unsworn statement during sentencing, he said that Ann and he got married on December 23, 1991, but during the providency inquiry, under oath, he said that they got married on December 23, 1989. That these two statements seem to conflict—unless they got divorced sometime in between; in that sense they don't absolutely conflict. I would ask him, "Can you clarify this?" Then, I would ask him the specific questions, "Were you married to Ann continuously from December 23, 1989 to December 7, 1992?" "When you said you married Ann on December 23, 1991, was that a mistake, or was it accurate?"

MJ: If I fax something to you tomorrow, LT Ecton, can you talk with your client and decide how you want to react, whether to object, by Tuesday [9 August]?

DC: Yes, I'm available until 15 August, and I can readily get in touch with him.

TC: I'll be on leave starting Monday, but LCDR Schroder can fill in for whatever is needed.

MJ: Okay, I'll send to both of you tomorrow [Friday, 5 August] and await a response. Whereupon the R.C.M. 802, MCM, 1984, conference ended.

**ACCORDINGLY, IT IS ORDERED THAT:**

1. If either party has cause why the questions in Appellate Exhibit VII, attached, should not be propounded to the Accused, for him to answer in writing under oath, such answers to be attached to the record, that party shall file notice of such cause with the court, with a copy to the other party, on or before 9 August 1994. The notice shall include the basis of the objection. Failure to file such notice will not obligate the Accused to answer the questions, but if the Accused expects to decline to answer the questions, notice of same under this paragraph is encouraged. If any such notice is filed, Trial Counsel shall initiate a R.C.M. 802 conference as soon as possible, to schedule an Article 39(a) session.

2. If no such notice is filed on or before 9 August 1994, Trial Counsel shall cause the questions in Appellate Exhibit VII to be propounded to the Accused, with notice to Defense Counsel of the time and place. The Prefatory Statement shall be read to the Accused, and his understanding of it shall be ascertained, and indicated by his initials in the appropriate boxes. If he understands, the Accused shall be asked to answer the questions in writing and under oath. The accused shall not be *required* to answer the questions. If he chooses to answer, his answers may be recorded on Appellate Exhibit VII, or on a separate sheet which shall be labelled Appellate Exhibit VIII. If he chooses not to answer, that fact shall be indicated on Appellate Exhibit VII. Upon completion of these procedures, Appellate Exhibit VII, and Appellate Exhibit VIII if any, shall be transmitted to the Military Judge, with copies to both parties. The person administering the questions shall make a record of the session, noting anything that occurred other than what appears on Appellate Exhibit VII and Appellate Exhibit VIII. If either counsel desires to bring to the court's attention anything about the session, counsel shall initiate a R.C.M. 802 conference within five working days after the session is completed.

3. If the Accused did not understand, or declined to answer one or more of the questions, counsel shall initiate an R.C.M. 802 conference as soon as possible, to schedule an Article 39(a) session.

4. If neither paragraph 2 hereof nor an R.C.M. 802 conference is carried out before 19 August 1994, Trial Counsel shall initiate an R.C.M. 802 conference as soon as possible on or after 19 August 1994.

MILITARY JUDGE'S ADDRESS

Mailing Address: CAPT L.I. McClelland, USCG
Military Judge
c/o Commandant (G–L–4)
U.S. Coast Guard
2100 Second Street SW
Washington, D.C.
20593–0001
Telephone Number: (202) 267–0071

Facsimile Number: (202) 267–4163

Done at Washington D.C.

5 August 1994

/s/ L.I. McClelland

L.I. McClelland

Captain, U.S. Coast Guard

Military Judge

Dist: Trial Counsel (LT McTague, D17(dl))

Defense Counsel (LT Ecton, NLSO Northwest)

## APPENDIX B
### Appellate Exhibit VII
### SPECIAL COURT–MARTIAL
### UNITED STATES COAST GUARD

UNITED STATES

v.

Richard T. Reed
Aviation Mechanic Third Class
U. S. Coast Guard

**Questions for
Accused**

Date:

### PREFATORY STATTEMENT

Petty Officer Reed, early in the trial of your case, after you pleaded guilty, the Military Judge conducted what is called an Inquiry into the Providency of your pleas of guilty. Among other things, she explained the rights you were giving up by pleading guilty, including the right to remain silent. She stated that you have the absolute right to remain silent about the offenses you were charged with committing, and that you cannot be compelled to testify or provide evidence against yourself. She stated that when you plead guilty to any offenses, she is required to ask you questions about them; that you are not obligated to answer her questions; if you choose not to answer, your pleas of guilty cannot be accepted. Do you recall and understand your right to remain silent, and that by pleading guilty you give up that right?

*I understand* _____ *(initials)*      *I do not understand* _____ *(initials)*

A little later in the trial, still as part of the Inquiry into the Providency of your pleas of guilty, you were put under oath and you answered the Military Judge's questions about the offenses to which you pled guilty. The Military Judge has directed that we ask you some additional questions. You should consider these questions to be part of that same inquiry at the trial. Do you understand?

*I understand* _____ *(initials)*      *I do not understand* _____ *(initials)*

Before I ask the additional questions, I advise you that you are suspected of committing perjury. You have the right to remain silent. You do not have to make any statement at all. Do you understand?

*I understand* _____ *(initials)*      *I do not understand* _____ *(initials)*

Before you decide whether or not to make a statement or answer questions, you may consult with a lawyer. If you decide to consult with a lawyer, this questioning will be stopped. Do you understand?

*I understand* _____ *(initials)*      *I do not understand* _____ *(initials)*

If you decide to make a statement or answer questions, anything you say may be used as evidence against you in a court of law, nonjudicial proceeding, or administrative proceeding. Do you understand?

*I understand* _____ *(initials)*      *I do not understand* _____ *(initials)*

If the questioning continues, you may stop it at any time by refusing to make further statements or by requesting to consult with a lawyer. Do you understand?

*I understand* _____ *(initials)*      *I do not understand* _____ *(initials)*

You have the right to have a civilian lawyer (retained at your own expense), your appointed military lawyer, or both, present during any questioning. Do you understand?

I understand _VAR_ (initials)          I do not understand _____ (initials)

Have you discussed what we are doing now with your appointed military lawyer, LT Ecton?

Yes _VAR_ (initials)          No _____ (initials)          LT Ecton is present _____ (initials)

[NOTE: If LT Ecton is not present and PO Reed has not discussed this with him, STOP at this point. PO Reed should be given the opportunity to consult LT Ecton. After that, begin again at the top.]

Do you desire to answer questions?

Yes _VAR_ (initials)          No _____ (initials)

### QUESTIONS AND SWORN STATEMENT

1. In your unsworn statement during sentencing proceedings, you stated that Ann and you were married on December 23, 1991 by a Justice of the Peace, and on May 5, 1992 by the church. During the providency inquiry, under oath, you stated that you married Ann on December 23, 1989. These two statements seem to conflict. Can you explain this? The statement I was reading WAS TYPED WITH AN ERROR. AT THE TIME I DID NOT STOP TO THINK THAT THE DATES WERE INCORRECT. THE CORRECT DATES ARE DEC. 23, 1989. (CONT)

2. Were you married to Ann continuously from December 23, 1989 to December 7, 1992?
YES

3. When you said you got married to Ann on December 23, 1991, was that a mistake, or was it accurate?
IT WAS A MISTAKE

_____
AM3 Richard T. Reed

Subscribed and sworn to before me this _10_ day

of _August_ _____ 1994

_____
Authorized to administer oaths by 10 U.S.C. 1044a
LCDR, USCG

APPENDIX  C
Appellate Exhibit VIII

## APPENDIX D

Appellate Exhibit IX

### SPECIAL COURT–MARTIAL UNITED STATES COAST GUARD

United States

Richard T. Reed Aviation Mechanic Third Class U.S. Coast Guard

### AFFIDAVIT OF
### LCDR BRYAN SCHRODER

1. On 10 August 1994, I fulfilled the requirements outlined by the Military Judge in paragraph 2 of the Court Order of 5 August 1994.

2. On 9 August 1994, I notified LT Ecton that I intended to meet with PO Reed on the afternoon of 9 August or the morning of 10 August, depending upon the schedule of the confinement facility. He indicated his approval, and stated that he had talked to his client about answering the questions proposed by the Military Judge. PO Reed was prepared to complete the question form.

3. On the afternoon of 9 August 1994, PO Reed was away from the confinement facility, so I arranged to meet with him the next morning. I met with PO Reed at 0830 in the visitors room of the Alaska Command Confinement Facility (ACCF) at Fort Richardson. Also present in the room throughout the meeting was Senior Airman (SRA) Hissler, an Air Force military policeman on the staff at the AACF.

4. Using the questions form, Appellate Exhibit VII, I read each section of the prefatory statement to PO Reed. I also allowed him to read the sections, following along with me. He indicated to me verbally, and by initialling the form, that he understood each of his rights. He also indicated that he had spoken to LT Ecton, and that he agreed to answer the questions. PO Reed indicated his agreement by initialling the appropriate boxes on the form.

5. PO Reed then proceeded to answer the questions. He wrote directly on the form. After completing the form, he indicated that the date of his church wedding was not 5 May 1992, but 5 May 1990. He wanted to make that correction as well, so I provided him with a sheet of paper. That document is included and marked as Appellate Exhibit VIII.

/s/ Bryan Schroder
BRYAN SCHRODER
Lieutenant Commander,
U.S. Coast Guard

SUBSCRIBED AND SWORN TO before me this 10th day of August, 1994.

/s/Mary Ann Woodward
Notary Public in and for Alaska
My commission expires: 1/31/96