UNITED STATES, Appellee

v.

David J. JANSSEN, Senior Airman
U.S. Air Force, Appellant

No. 14-0130

Crim. App. No. 37681

United States Court of Appeals for the Armed Forces

Argued January 28, 2014

Decided April 15, 2014

STUCKY, J., delivered the opinion of the Court, in which BAKER, C.J., and ERDMANN, RYAN, and OHLSON, JJ., joined.


Counsel

For Appellant:  Captain Jeffrey A. Davis (argued).

For Appellee:  Major Daniel J. Breen (argued); Lieutenant Colonel C. Taylor Smith and Gerald R. Bruce, Esq. (on brief).


Military Judge:  Don M. Christensen

United States v. Janssen, No. 14-0130/AF

Judge STUCKY delivered the opinion of the Court.

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law:  but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

> [T]he Appointments Clause of Article II is more than a matter of "etiquette or protocol"; it is among the significant structural safeguards of the constitutional scheme.

Edmond v. United States, 520 U.S. 651, 659 (1997).

Most criminal cases decided by federal courts of appeals raise questions of statutory interpretation or, if the Constitution is directly implicated, the guarantees of individual rights provided therein for criminal prosecution.  It is relatively rare for a case to raise an issue involving the fundamental structural provisions devised by the Framers in allocating power within the government they constructed.  This is such a case.

We granted review to consider whether an appellate military judge on the panel of the United States Air Force Court of Criminal Appeals (CCA) that affirmed Appellant's convictions and sentence was properly appointed.  We hold that the Government failed to establish that the judge was properly appointed under

2

the Appointments Clause of the Constitution of the United States.  U.S. Const. art. II, § 2, cl. 2.

## I.  Background

A general court-martial with members convicted Appellant, contrary to his pleas, of disobeying the order of a noncommissioned officer, rape, assault consummated by a battery, endeavoring to impede an investigation, and breaking restriction.  Articles 91, 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891, 920, 928, 934 (2012). The members sentenced Appellant to a bad-conduct discharge, confinement for twelve years and eight months, forfeiture of $1,300 pay per month for twelve years, and reduction to the grade of E-1.  The convening authority approved only so much of the sentence as called for a bad-conduct discharge, confinement for nine years, and reduction to the grade of E-1.

The case was originally docketed at the CCA on June 24, 2010, but pursuant to Appellant's motion was remanded on July 20, 2011, for preparation of a substantially verbatim record of trial.  The record was completed and the convening authority issued a new action consistent with his original action.

On January 25, 2013, the Air Force Judge Advocate General, purportedly acting under Article 66(a), UCMJ, 10 U.S.C. § 866(a) (2012), appointed Laurence M. Soybel to the position of appellate military judge on the CCA.  At the time of this

appointment, Mr. Soybel, a retired Air Force officer and former appellate military judge, was serving as a civilian litigation attorney in the Department of the Air Force (DAF).  Judge Soybel was reassigned from his DAF civilian position; he was not recalled to active duty.

A panel of the CCA that included Judge Soybel set aside Appellant's Article 134 convictions and dismissed those specifications because they failed to include the terminal element, but nevertheless affirmed the sentence.  United States v. Janssen, ACM No. 37681 (f rev), 2013 CCA LEXIS 397, at *12–*13, *21, 2013 WL 2448987, at *4, *7 (A.F. Ct. Crim. App. May 9, 2013) (unpublished).  Two weeks later, on May 23, 2013, the CCA ordered the case returned to the court for reconsideration.[1] United States v. Janssen, ACM No. 37681 (f rev), slip op. at 1 (A.F. Ct. Crim. App. May 23, 2013) (notice of reconsideration).

On June 25, 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 et seq.," purported to "appoint Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals."  Memorandum from Chuck Hagel, Sec'y of Def., to Eric

---

[1] Appellant's was one of thirty-four cases the CCA ordered returned to that court for reconsideration on May 23, 2013.  No reason was given for the recalls in the order.  Appellants in several of the other recalled cases had already challenged Judge Soybel's appointment in petitions for review at this Court.

Fanning, Sec'y of the Air Force (June 25, 2013). On July 22, 2013, the CCA issued a Notice of Special Panel indicating that Appellant's case was referred to a panel that again included Judge Soybel. United States v. Janssen, ACM No. 37681 (recon) (A.F. Ct. Crim. App. July 22, 2013) (notice of special panel). In its reconsideration of Appellant's case, also issued on July 22, the CCA asserted, in a footnote and without further explanation, that, upon its own motion, it had "vacated the previous decision in this case for reconsideration before a properly constituted panel." United States v. Janssen, ACM No. 37681 (recon), 2013 CCA LEXIS 627, at *1 n.1, 2013 WL 3972252, at n.1 (A.F. Ct. Crim. App. July 22, 2013) (unpublished). This special panel reached the same results Panel 1 had in its decision of May 9. 2013 CCA LEXIS 627, at *21, 2013 WL 3972252, at *7.

On August 16, 2013, Appellant moved the CCA to vacate its July 22 decision, asserting that the Secretary of Defense lacked the statutory authority to appoint inferior officers. In an order issued on September 11, 2013, the CCA denied the motion to vacate, agreeing with the Government that the Secretary of Defense had authority to appoint Mr. Soybel to serve as an appellate military judge on the CCA. United States v. Janssen, ACM No. 37681 (A.F. Ct. Crim. App. Sept. 11, 2013) (order denying motion to vacate).

United States v. Janssen, No. 14-0130/AF

## II. Discussion

Although the Military Justice Act of 1968[2] established the offices of military judge and appellate military judge and converted the Boards of Review to Courts of Military Review, litigation over the constitutional status of the military judiciary did not occur until the 1990s. In Weiss v. United States, the Supreme Court held that military officers serving as trial and appellate military judges were not appointed in violation of the Appointments Clause. 510 U.S. 163, 170 (1994). This was because Congress had not, by statute, required a separate judicial appointment for them, and their judicial duties were not so distinct from their duties as military officers as to require separate appointments by the force of the Appointments Clause. Id. at 171. It followed that their appointments as officers by the President, upon Senate advice and consent, sufficed to satisfy the requirements of the clause. Id. at 173-77.[3]

The disposition of the Appointments Clause issue in Weiss made it unnecessary to decide whether appellate military judges

---

[2] Pub. L. 90-632, 82 Stat. 1335 (1968).
[3] The Supreme Court also held that the lack of fixed terms of office for trial and appellate military judges did not violate the Due Process Clause. Weiss, 510 U.S. at 176-81. See United States v. Graf, 35 M.J. 450, 455 (C.M.A. 1992) (holding that "a fixed term of office is not required as a matter of constitutional due process for military judges at courts-martial").

were "principal officers," who must be appointed with Senate advice and consent, or "inferior officers," who may be appointed by the alternative means set out in the Appointments Clause if Congress so provides.[4]

It was in this context that the question of the appointment of civilians as appellate military judges arose. Although the UCMJ had from the beginning authorized the service of civilians on what became the Courts of Criminal Appeals, the only armed force to do so regularly was the Coast Guard, which was not a part of the Department of Defense[5] and operates under a separate set of statutes.

In United States v. Carpenter, we held that the appointment of the civilian chief judge of the Coast Guard Court of Military Review by the General Counsel of the Department of Transportation violated the Appointments Clause, because he was an inferior officer who had to be appointed in accordance with its provisions. However, we applied the de facto officer doctrine[6] to validate his acts, notwithstanding the invalid

---

[4] Justice Souter carefully analyzed this question in his concurrence in Weiss, 510 U.S. at 182-94.

[5] Except when it operates as a service in the Navy, see 14 U.S.C. § 1 (2012), which it has not done since World War II. Robert Scheina, The Coast Guard at War, United States Coast Guard, http://www.uscg.mil/history/articles/h_CGatwar.asp (last updated Oct. 11, 2012).

[6] The de facto officer doctrine "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of [his]

appointment.  37 M.J. 291 (C.M.A. 1993).  In Ryder v. United States, the Supreme Court refused to apply the de facto officer doctrine in another Coast Guard case and remanded for "a hearing before a properly appointed panel" of the Coast Guard court. 515 U.S. at 188.

Thereafter, the Coast Guard changed the method of appointing its civilian judges, lodging the authority in the Secretary of Transportation, who was concededly a "head of department" within the meaning of the Appointments Clause.  See 5 U.S.C. § 101 (2012).  In Edmond, the Supreme Court held that (1) civilian appellate military judges were "inferior Officers" within the meaning of the Appointments Clause, and (2) a statute (49 U.S.C. § 323(a) (2012)) granting the Secretary of Transportation authority to "appoint and fix the pay of officers and employees of the Department of Transportation" gave the Secretary the authority to appoint them.  520 U.S. at 666.

"Congress may by Law vest the Appointment of such inferior Officers, as they think proper, . . . in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.  The question presented in this case is therefore a narrow one, although one of first impression in the Department of Defense:  Did Congress "by law" vest the Secretary of Defense, the head of a

---

appointment to office is deficient."  Ryder v. United States, 515 U.S. 177, 180 (1995); Norton v. Shelby Cnty., 118 U.S. 425, 446 (1886).

department, with the authority to appoint a civilian as an appellate military judge?[7]  This is a question of law which we review de novo.

The Government does not argue that any specific statutory authority exists for the action of the Secretary of Defense.[8] Rather, it relies on general, government-wide "housekeeping" statutes for the necessary authority.  In particular, the Government relies on 5 U.S.C. § 301 (2012), which empowers a department head to "prescribe regulations for the government of his department [and] the conduct of its employees," and on 5 U.S.C. § 3101 (2012), which grants each executive agency the authority to "employ such number of employees . . . as Congress may appropriate for from year to year."  The Government points to 5 U.S.C. § 2105(a) (2012), which includes an "officer" within the definition of "employee" and argues that the power to employ is the power to appoint.  Finally, the Government cites Willy v. Admin. Rev. Bd., 423 F.3d 483, 491-92 (5th Cir. 2005), for the

---

[7] Although Judge Soybel is a retired regular Air Force officer, he was not recalled to active duty to serve as an appellate military judge, but was appointed as a civilian.  In Carpenter, the Court of Military Appeals rejected the argument that a civilian judge's previous confirmation as a military officer sufficed in such a situation.  37 M.J. at 294-95.  In Ryder, the Supreme Court declined to reach the question.  515 U.S. at 184 n.4.

[8] The general grant of authority to the Secretary over the department, 10 U.S.C. § 113 (2012), is cited in the Government's brief only for the proposition that the Secretary is a "head of Department" -- a proposition conceded by all parties.

proposition that 5 U.S.C. § 301 is authority for the Secretary's action.

Willy was an Appointments Clause attack on the Secretary of Labor's delegation of decisional authority relating to certain whistleblower claims to an administrative board created by regulation. 423 F.3d at 490. The United States Court of Appeals for the Fifth Circuit found that the language of 5 U.S.C. § 301 and Reorganization Plan No. 6 of 1950, 15 Fed. Reg. 3174 (proposed Mar. 13, 1950), gave the Secretary the authority to establish the board and appoint its members. Id. at 491-93.

We find Willy unpersuasive for several reasons. In the first place, Reorganization Plan No. 6 is specific to the Secretary of Labor and has no relevance to the Secretary of Defense. In the second place, the statutory structure of the authority of the Secretary of Labor and his department is completely different from that of the Secretary of Defense. The Labor Department statutes (29 U.S.C. §§ 551-568 (2012)) are short, vague, and very old. As will be seen below, Congress has legislated with great specificity on the powers of the Secretary of Defense and the structure of the department. Finally, we disagree with the Fifth Circuit's reading of Edmond, on the degree of statutory specificity necessary to confer the power to appoint. The Supreme Court spent substantial time in Edmond

differentiating between the "assignment" or "detail" of appellate military judges and their "appointment." 520 U.S. at 656-58. Words have meaning, and we interpret Edmond to require statutory language specifically granting the head of a department the power to appoint inferior officers.

The fundamental problem with the Government's contention that 5 U.S.C. § 301 (which grants only the power to prescribe regulations) and 5 U.S.C. § 3101 (which establishes a general authority to employ, subject to appropriations) authorize the Secretary's action is that the argument makes no sense in the face of the statutory structure that Congress has enacted for the Department of Defense. Chapter 4 of Title 10, United States Code, (10 U.S.C. §§ 131-144 (2012)) sets out in great detail the officials who make up the Office of the Secretary of Defense, and the procedures to be employed for their appointment. There are, for example, fourteen assistant secretaries of defense, who are appointed by the President with Senate advice and consent, although they are certainly "inferior officers" constitutionally. 10 U.S.C. § 138(a) (2012). Some have statutory portfolios and others do not.

More to the point, Congress has established three positions within the Office of the Secretary and explicitly provided that

11

the Secretary alone shall appoint them.[9]  This raises the obvious question of why Congress would go to the trouble of enshrining the positions in statute and providing for their appointment if, as the Government argues, the Secretary already has the authority under the sections of Title 5 to do so.  One searches the sections of Title 10 in vain for any provision conferring a general appointment power for officers after the manner of the Transportation Department statute upheld in Edmond, and at oral argument, Government counsel conceded that he had been unable to find any instance in which the Secretary of Defense had in fact appointed an inferior officer under the authority of Title 5.

Furthermore, the structure of the sections of Title 5 undercuts the argument that they confer the kind of general authority that the Government argues for.  For example, in Chapter 31 of Title 5, the same chapter as one of the statutes the Government claims grants the Secretary general authority to appoint inferior officers, Congress has specifically provided for the appointment of administrative law judges.  5 U.S.C. § 3105 (2012).  This suggests that Congress did not intend Title 5 to serve as a general appointment authority for, among others, Article I judges.  Further, if Congress had intended Title 5 to

---

[9] These are the Deputy Assistant Secretary of Defense for Developmental Test and Evaluation (10 U.S.C. § 139b(a)(1) (2012)), the Deputy Assistant Secretary of Defense for Systems Engineering (10 U.S.C. § 139b(b)(1) (2012)), and the Director of Small Business Programs (10 U.S.C. § 144(a) (2012)).

be read to include the power to appoint inferior officers, it would not have needed to grant the appropriate Secretary the specific authority to "appoint civilian employees of the department in which the Coast Guard is operating as appellate military judges."  14 U.S.C. § 153 (2012).

The conclusion is clear:  While Congress certainly has the authority under the Appointments Clause to authorize the Secretary of Defense to appoint appellate military judges, either through general legislation granting authority to appoint inferior officers or specific legislation granting authority to appoint appellate military judges, it has not done so.  This being the case, the appointment of Judge Soybel was required to be done by the President with Senate advice and consent, which is the default method for the appointments of inferior officers. See Edmond, 520 U.S. at 660.  Since this was not done, his appointment as an appellate military judge is invalid and of no effect.

In Ryder, the Supreme Court declined to apply the de facto officer doctrine to the actions of the invalidly appointed members of the Coast Guard Court of Military Review, because the petitioner challenged the composition of the court while his case was pending before it on direct review.  515 U.S. at 182-84.  The Supreme Court stated that applying the doctrine in such a case "would create a disincentive to raise Appointments Clause

challenges with respect to questionable judicial appointments." Id. at 183. In this case, Appellant could not challenge the Secretary of Defense's appointment of Judge Soybel because he had no notice that Judge Soybel was on the panel: The CCA issued the Notice of Special Panel on July 22, 2013, the same date that it issued its opinion. Appellant, however, promptly challenged the composition of the panel through a motion to vacate while the case was still on direct review and received a decision on the merits from a panel of that court. Under these facts, we decline to apply the de facto officer doctrine.

The decision of the United States Air Force Court of Criminal Appeals is reversed. The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for a new review under Article 66, UCMJ, 10 U.S.C. § 866 (2012), before a properly constituted panel of that court.