# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant MARKUS E. NEWHOUSE
## United States Air Force

## ACM 38019 (recon)

## 04 September 2014

Sentence adjudged 9 August 2011 by GCM convened at Lackland Air Force Base, Texas. Military Judge: Matthew D. van Dalen.

Approved sentence: Bad-conduct discharge, confinement for 3 months, and reduction to E-3.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Jason S. Osborne; Major John M. Simms; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

PER CURIAM:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of abusive sexual contact, in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved sentence was a bad-conduct discharge, confinement for 3 months, and reduction to E-3.

*Procedural History*

On 25 January 2013, The Judge Advocate General of the Air Force appointed Mr. Laurence M. Soybel to the position of appellate military judge on the Air Force Court of Criminal Appeals pursuant to Article 66(a), UCMJ, 10 U.S.C. § 866(a).  At the time of this appointment, Mr. Soybel, a retired Air Force officer and former appellate military judge, was serving as a civilian litigation attorney in the Department of the Air Force.  On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq.*," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals."  Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning, (25 June 2013).

When the appellant's case was initially before us, the appellant asserted that the military judge erred by denying a defense motion to suppress statements he made to a civilian police detective.[1]

On 5 April 2013, we issued a decision affirming the findings and sentence. *United States v. Newhouse*, ACM 38019 (A.F. Ct. Crim. App. 5 April 2013) (unpub. op.). Mr. Soybel was a member of the panel that issued this decision, pursuant to his apparent appointment by The Judge Advocate General.[2]  This Court then sua sponte reconsidered its decision and issued another decision after Mr. Soybel's appointment by the Secretary of Defense.  This decision, issued on 22 July 2013, again affirmed the findings and sentence and consisted of the same panel members as the 5 April 2013 decision. *United States v. Newhouse*, ACM 38019 (recon) (A.F. Ct. Crim. App. 22 July 2013 (unpub. op.).  On 15 August 2013, the appellant moved to vacate our decision based on a challenge to Mr. Soybel's participation.[3]  The Government originally opposed this motion.

On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."  The following day, the Government changed its position and moved that we grant reconsideration.  In light of *Janssen*, we granted the motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors.  The appellant

---

[1] The appellant alleged two related legal theories which he asserted should have resulted in the suppression of his confession to civilian law enforcement agents.  We examine both theories in our analysis of the military judge's ruling on the admissibility of the confession.

[2] The appellant was notified of the composition of this special panel on 28 March 2013 and did not challenge it at that time.

[3] The appellant also moved for reconsideration en banc.  We deny the motion for reconsideration en banc.

submitted a supplemental assignment of errors asserting he is entitled to relief due to excessive post-trial processing delays. With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this Court. Finding no error that materially prejudices a substantial right of the appellant, we affirm the findings and sentence.

*Background*

The appellant and Senior Airman (SrA) CO, both married to others, were coworkers. On 1 August 2010, while SrA CO was separated from her husband, the appellant volunteered to take her out to celebrate her birthday. Although initially planned as a larger group of friends, as the day went on everyone else canceled, leaving just the appellant and SrA CO. They went to a dance club for several hours. Both the appellant and SrA CO drank throughout the night. The appellant drove SrA CO back to her off-base apartment and walked her inside. At some point later, SrA CO went to sleep in her bedroom while the appellant remained in the living area.

Later that evening, the appellant entered SrA CO's bedroom, repositioned her on the bed, touched her breasts, kissed her body, removed her clothing, and performed cunnilingus. SrA CO testified that she never consented to the activity and awoke only after the appellant began cunnilingus. The appellant testified that he believed the activity was consensual.

SrA CO did not initially report the incident. However, on 20 September 2010, when she learned that a new duty roster scheduled her to work with the appellant, she notified her supervisor what had occurred. Her supervisor notified the Air Force Office of Special Investigations (AFOSI). Both AFOSI and the San Antonio Police Department (SAPD) conducted investigations. The SAPD interviewed the appellant and recorded his statement. AFOSI also sought to interview the appellant after the local district attorney ceded jurisdiction to the Air Force, but the appellant declined to speak with military investigators.

*Motion to Suppress*

As indicated above, AFOSI was the first law enforcement agency notified of the incident. AFOSI interviewed SrA CO and, with SrA CO's consent, went to her apartment and seized her bed covers. Two days later, AFOSI notified the SAPD. Detective RD was assigned the case and SAPD took over primary investigative responsibility. AFOSI placed its case in a "monitor" status, meaning AFOSI would track the status of the civilian investigation and provide updates to military commanders as appropriate.

At the outset of his investigation, Detective RD met with AFOSI agents and received a copy of SrA CO's statement. He requested the physical evidence (the bedding) from AFOSI, but AFOSI declined to release it.[4]

Detective RD did not re-interview SrA CO. His first and only investigative activity was to interview the appellant. To facilitate the interview, Detective RD asked AFOSI to provide him the appellant's contact information. AFOSI did not. Instead, Detective RD received the appellant's telephone number from the appellant's first sergeant.

Detective RD called the appellant and invited him to the police station for an interview. The appellant agreed. Detective RD's interview with the appellant was recorded. At no time during the interview was the appellant under arrest. He was not read his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), or Article 31, UCMJ, 10 U.S.C. § 831. At the conclusion of the interview and in response to a question from the appellant, Detective RD said that he was not sure what would happen with the case because it would need to be coordinated with the military. Detective RD wrote his investigative report and submitted it to prosecutors, who thereafter agreed to release jurisdiction to the Air Force.

As part of its "monitor" investigation, AFOSI agents conducted background checks and interviewed additional witnesses. These investigative steps were not coordinated with or requested by the SAPD. Rather, they were done because AFOSI policy requires certain investigative tasks be conducted, even in "monitor" cases, to establish a "sufficient" investigation.

Trial defense counsel moved to suppress the appellant's statement to the SAPD, arguing that the status of the AFOSI and SAPD investigations required the SAPD detective to advise the appellant of his Article 31, UCMJ, rights. Because the detective did not, the appellant urged, the statement should have been suppressed.

In *United States v. Quillen*, 27 M.J. 312 (C.M.A. 1988), the Court of Military Appeals provided at least two scenarios in which a civilian investigator must provide Article 31(b), UCMJ, warnings: "(1) When the scope and character of the cooperative efforts demonstrate that the two [military and civilian] investigations merged into an indivisible entity; and (2) when the civilian investigator acts in furtherance of any military investigation, or in any sense as an instrument of the military." *Id.* at 314 (citations and internal quotation marks omitted).

---

[4] The Air Force Office of Special Investigations' declination was based on the staff judge advocate's recommendation that they retain the evidence because the Air Force was attempting to obtain jurisdiction from local authorities.

In his ruling on the motion to suppress, the military judge cited several of the applicable cases on the issue, including *United States v. Brisbane*, 63 M.J. 106 (C.A.A.F. 2006); *United States v. Cohen*, 63 M.J. 45 (C.A.A.F. 2006); *Quillen*; *United States v. Penn*, 39 C.M.R. 194 (C.M.A. 1969); and *United States v. Grisham*, 16 C.M.R. 268 (C.M.A. 1954). He concluded the SAPD was not an instrument of the military, but he believed the investigations had "merged" and the law enforcement organizations had coordinated the investigation. He therefore granted the motion to suppress.

The Government asked the military judge to reconsider his ruling. After hearing additional argument, the military judge reconsidered his ruling and denied the motion to suppress. In his ruling upon reconsideration, the military judge concluded that his initial ruling was based on an erroneous application of the "merger" test. The military judge stated, in part:

> Apart from notifying SAPD and providing them with SrA [CO's] statement and contact information, as well as indirectly coordinating contact between SAPD and the Accused, no other investigatory matters were coordinated. . . . OSI never provided any of [its] evidence to SAPD. Likewise, none of the background checks or databases reviewed by OSI on the Accused or SrA [CO] was ever shared with SAPD. This court acknowledges that SAPD and OSI did have open lines of communication and could have contacted each other readily, but there is scant evidence that any of the investigative efforts relied in any significant measure on that coordination.

> . . . Therefore, [the] court . . . finds that no evidence exists that guidance or advice was actually provided to SAPD in the course of their investigation.

Acknowledging that his initial definition of "merger" was overbroad, the military judge found that the investigations had not "merged" and that the SAPD was not required to advise the appellant of his Article 31, UCMJ, rights prior to the interview. Accordingly, he admitted the statements.

Before us, the appellant first argues that the military judge "abuse[d] his discretion when he reversed his finding that the military and civilian investigations merged." Rule for Courts-Martial 905(f) states that "[o]n request of any party or *sua sponte*, the military judge may . . . reconsider any ruling, other than one amounting to a finding of not guilty." The appellant has not cited any authority for the proposition that the military judge did not have the authority to reconsider his ruling. Rather, the appellant appears to argue that the military judge's ultimate ruling was an abuse of discretion.

In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party. "We will reverse for an abuse of discretion if

the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law." *United States v. Sullivan*, 42 M.J. 360, 363 (C.A.A.F. 1995). Our superior court has left open whether a de novo or clearly erroneous standard of review applies to the question whether a civilian investigation was "conducted, instigated, or participated in" by military authorities. *United States v. Pinson*, 56 M.J. 489, 494 (C.A.A.F. 2002) (quoting Mil. R. Evid. 305(h)(2)). Put another way, military law is unsettled on whether this is a finding of fact or a conclusion of law.

The fact that a ruling upon reconsideration differs from an initial ruling does not necessarily compel a finding that either was an abuse of discretion. Here, however, the military judge found—and we concur—that his initial ruling was premised on an erroneous view of the law.

As in *Pinson*, we need not determine whether "participation" is a factual or legal conclusion, as we uphold the military judge's ruling upon reconsideration under either test. The record supports the military judge's finding that, although the military initially notified SAPD of the allegation, nothing that occurred between the military and SAPD resulted in a merged investigation.

The appellant next argues, citing *United States v. Holder*, 28 C.M.R. 14 (C.M.A. 1959), that, because there was "evidence of subterfuge or an attempt to avoid the Code," the military judge should have suppressed the appellant's statement. While *Holder* can be read to suggest that evidence of an attempt to avoid the Code's protections should result in suppression of unwarned statements, the facts in *Holder* are easily distinguishable from the facts in the instant case, and the *Holder* Court ultimately upheld the admission of the unwarned statements.

In *Holder*, the FBI arrested the accused based on an Army-issued warrant for desertion, a purely military offense. Without receiving an Article 31, UCMJ, rights advisement, the accused was interrogated by the FBI about his military status and his absence. The Army later sought to use those statements in his court-martial. The Court of Military Appeals upheld the admission of those statements. In its analysis, the Court noted that, when offenses are violations not only of the UCMJ but also of the law of the civilian jurisdiction, civil authorities may have "a legitimate interest in interrogating the accused apart from building a case for prosecution in military courts." *Id.* at 16.

The military judge's ruling upon reconsideration did not address whether there was any evidence of subterfuge or an attempt to avoid the Code. However, the military judge was mindful of the significance of such evidence, if it existed, because in his initial ruling he acknowledged the issue, saying: "Intentionally circumventing the requirement to provide Article 31 rights by allowing civilian authorities to conduct the questioning of the Accused *is never condoned*." (emphasis added). In the absence of any finding that such evidence existed—and we ourselves discern none from the record—we consider the

evidence in the light most favorable to the prevailing party and find that it supports the conclusion that the military judge found no evidence that there was subterfuge or an attempt to avoid the requirements of Article 31, UCMJ. The military judge's findings and conclusions upon reconsideration are amply supported by the record, so we find no error in the military judge's decision to admit the appellant's statements.

*Appellate Review Time Standards*

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case continues through the appellate process. *United States v. Mackie*, 72 M.J. 135 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id.* at 136; *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 507 U.S. at 530.

This case was docketed for appeal on 13 October 2011, and this Court rendered an initial decision on 5 April 2013. This was within the 18-month standard established in *Moreno*. We sua sponte reconsidered that opinion and issued a second opinion on 22 July 2013. On 15 August 2013, the appellant then filed a motion to vacate, which the Government opposed. As stated earlier in this opinion, our superior court recently decided that Mr. Soybel was not properly appointed. *United States v. Janssen*, 73 M.J. 221 (C.A.A.F. 2014). Accordingly, we granted a motion for reconsideration on 29 April 2014, 257 days after the appellant's motion. We have newly considered the appellant's court-martial before a properly constituted panel and have issued this decision.

We analyze the *Barker* factors for the untimely post-trial processing of this case. The first factor weighs in favor of the appellant; the length of the total appellate processing of this case before this Court is presumptively unreasonable and therefore satisfies the first *Barker* factor. No petition for grant of review was filed with our superior court that would have involved a different calculation for the length of the delay. *See Mackie*, 72 M.J. at 136 (*Barker* analysis not triggered where periods of time between

action by Court of Appeals for the Armed Forces and the service courts do not exceed the *Moreno* standards and there is no implication of malicious delay). The second factor weighs against the appellant. The reason for the delay in acting on the motion for reconsideration was to allow our superior court to fully consider a constitutional issue of first impression about whether the Secretary of Defense has the authority under the Appointments Clause[5] to appoint civilian employees to the service courts of criminal appeals. Several months of the processing of this matter was spent awaiting definitive guidance from our superior court on this matter. Third, although the Government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), the appellant never asserted his right to speedy post-trial.[6] Finally, on the fourth factor, the appellant fails to demonstrate any prejudice in this case. "An appellant must demonstrate a particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Arriaga*, 70 M.J. at 58 (internal quotations marks and citation omitted). Here, the appellant has not done so. The appellant admits that "the prejudice in this case rises and falls on the determination by the Court on the issues." We conclude that the appellant is not entitled to relief on the other issues; therefore, by his own admission, there is no prejudice.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case not to be so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

Additionally, Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and evidence of bad faith or gross

---

[5] U.S. CONST. art. II, § 2, cl. 2.

[6] The appellant's supplemental assignment of error states that he provided notice of his right to speedy appellate review in his third enlargement of time. However, the appellant also notes that he only submitted one enlargement of time. The second contention is true, the first is not. The record does not contain any demand by the appellant for speedy appellate review.

negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing. The reason for the delay was to allow this Court and our superior court to fully consider a constitutional issue of first impression about whether the Secretary of Defense has the authority under the Appointments Clause to appoint civilian employees to the service courts of criminal appeals. *See Janssen*, 73 M.J. 221. The impact of any delay was mitigated when we specifically allowed the appellant to file any supplemental assignments of error. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

## *Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38019 (recon)