# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Technical Sergeant DANNY L. ANNIS
### United States Air Force

### ACM 38001 (rem)

### 3 September 2015

Sentence adjudged 22 July 2011 by GCM convened at Fort George G. Meade, Maryland. Military Judge: Michael J. Coco.

Approved Sentence: Bad-conduct discharge.

Appellate Counsel for the Appellant: Major Daniel E. Schoeni and Major Christopher D. James.

Appellate Counsel for the United States: Lieutenant Colonel Jennifer A. Porter; Major Lauren N. DiDomenico; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and TELLER
Appellate Military Judges

OPINION OF THE COURT
UPON REMAND

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

MITCHELL, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of aggravated sexual assault and one specification of abusive sexual contact, both in violation of Article 120, UCMJ, 10 U.S.C. § 920. The adjudged and approved sentence consisted of a bad-conduct discharge.

*Procedural History*

On 25 June 2013, the Secretary of Defense appointed a civilian employee of the Department of the Air Force, who was also a retired Air Force officer and a former active duty appellate military judge, to serve as an appellate military judge on the Air Force Court of Criminal Appeals. When Appellant's case was initially before us, Appellant argued that the military judge erred by preventing him from introducing evidence of the victim's prior extramarital affair as evidence of a motive to fabricate. We disagreed and issued a decision in which we affirmed the findings and sentence. *United States v. Annis,* ACM 38001 (A.F. Ct. Crim. App. 19 August 2013) (unpub. op.). The civilian employee was a member of the panel that decided Appellant's case.

On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that the earlier appointment was "invalid and of no effect." On 11 March 2015, our superior court concluded the improper appointment of the civilian employee by the Secretary of Defense was not waived by an earlier failure to object. *United States v. Jones*, 74 M.J. 95, 97 (C.A.A.F. 2015). Pursuant to *Janssen* and *Jones*, our superior court reversed our decision in this case and remanded it to us for a new review under Article 66, UCMJ, 10 U.S.C. § 866, before a properly constituted panel. *United States v. Annis*, ___ M.J. ___ No. 14-0125/AF (Daily Journal 30 March 2015). In addition to reviewing the prior pleadings, we issued an order authorizing Appellant to file supplemental briefing.

In light of this ruling by our superior court, we have reviewed Appellant's case. Our review includes Appellant's previous filings alleging error in the suppression of evidence under Mil. R. Evid. 412, the previous opinion issued by this court, and Appellant's supplemental assignment of errors. In the supplemental assignment of errors, Appellant asserts that the post-trial processing delays between his court-martial in 2011 and this decision in 2015 amount to unreasonable post-trial delay warranting relief. We disagree on both issues and affirm the findings and sentence.

*Background*

Appellant shared an apartment with Staff Sergeant (SSgt) VB in Maryland. In December 2009, while Appellant was deployed, Ms. AG moved into the apartment with SSgt VB and began electronic communications with Appellant. The electronic communication addressed that they would both be living in the same apartment and their shared interests. One topic was that they could be "cuddle buddies" when they watched movies together in the apartment. At that time, Ms. AG was separated from her husband, Senior Airman (SrA) BC. Ms. AG lived in the apartment for about six weeks but then

moved out prior to Appellant's return from deployment in order to move back in with her husband, SrA BC.

Appellant and Ms. AG met in person in March 2010 and then had some personal social interactions over the ensuing months to include eating pizza while watching a movie at Appellant's apartment and a motorcycle ride to a tattoo parlor. Ms. AG did not consider any of these interactions as dates.

By October 2010, Ms. AG had again separated from SrA BC. Ms. AG and Appellant met for drinks and dinner the night of 1 October 2010. During the course of the evening, Appellant and Ms. AG conversed about a variety of topics. At one point, they spoke about penis size to include that Ms. AG hated it when women were dishonest: "the best thing is always honesty, particularly in regard to that." She also told him "that, hypothetically, if [she] were in the situation with him [she] would have been honest with him."

Later, Ms. AG concluded that she was too intoxicated to drive and returned with Appellant to his apartment. They decided to watch a movie in Appellant's bedroom. Ms. AG removed her jeans, boots, and bra, wrapped herself in a blanket and lay down on Appellant's bed. While in the bed, Ms. AG sent an email to her fiancé, Specialist (SPC) CG. Appellant reminded Ms. AG of their conversation about penis size and guided her hand to his penis, and she "told him . . . it was a good size and just left it alone." Ms. AG then fell asleep in the bed while they were watching a movie. Ms. AG was awakened several times throughout the night by Appellant engaging in sexual activity with her; each time she said, "no," "stop it," and/or pushed him away and Appellant would stop.[1] The final time was when Appellant had his fingers in her vagina and his thumb in her anus. Although she attempted to push him away, Appellant "was very forceful this time and pushed back."

The next morning, Ms. AG woke up feeling "fuzzy" and asked Appellant why she was not wearing any underwear. Appellant chuckled and remarked that he also was not wearing any underwear. Ms. AG dressed and departed. Appellant called her three times and sent her two text messages writing, "I feel so bad. Will you ever forgive me?"

Ms. AG reported the assault to law enforcement who took her to a registered nurse for a sexual assault forensic medical examination. The nurse identified vaginal and anal injuries consistent with penetration.

---

[1] Appellant was acquitted of the other specifications that alleged rape, aggravated sexual contact, aggravated sexual assault, and sodomy by the use of force or by overwhelming physical strength, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925. All the charges and specifications were a result of Appellant's acts towards Ms. AG on the night of 1 October 2010.

*Suppression of Evidence of Ms. AG's Previous Adultery*

The trial defense counsel filed a timely motion to admit evidence under Mil. R. Evid. 412. Trial defense counsel explained, "[W]e only want to make sure that in the course of general questioning we can refer to the two people in her life as they were and that is that she had, as needed, that she was married to [SrA BC] and that she was dating, had a special relationship with [SPC CG]." On appeal, Appellant challenges the trial judge's decision to suppress the evidence that at the time of the assault Ms. AG was married to SrA BC and engaging in an adulterous relationship with SPC CG.[2]

During the motion hearing, evidence was introduced that, months earlier when Ms. AG confirmed her previous adulteries to SrA BC, he lost his temper, removed all the pictures of the two of them from the walls of their abode, smashed the pictures, and set them on fire.

The trial judge ruled as inadmissible the evidence that Ms. AG was married to SrA BC at the time of the incident at the same time she was in a serious relationship with SPC CG. The trial judge clarified the ruling by stating that the trial defense counsel could cross examine Ms. AG on the fact that she was married and that she was disingenuous when asked if she was married, but prohibited the introduction of evidence of dating and having sexual intercourse with SPC CG while she was married to SrA BC. Initially, the trial judge also ruled as inadmissible evidence that Ms. AG was in a serious dating relationship with SPC CG and intended to marry him at the time of the incident.

The trial defense counsel engaged in a thorough and extensive cross-examination of Ms. AG. The cross-examination included impeachment with prior inconsistent statements, and the overall credibility of her claims. Through cross-examination, Ms. AG admitted that the only reason she did not "hang out" with Appellant more was because she was dating SPC CG and "he consumed most of [her] time." Ms. AG stated that while she was in Appellant's bed she sent SPC CG an email telling him that she loved him and signed it, "Your wife." Ms. AG also admitted that she told SPC CG of the assault before she reported it to law enforcement, that he was very upset, and that she was concerned SPC CG "might do something irrational or be very upset if he had run into [Appellant] walking the streets or something like that." Ms. AG conceded that she lied to SrA BC when she was married to him about "very important matters" and that she had similarly made "misrepresentations" to SPC CG about "very important matters."

When Ms. AG testified she volunteered some of the information that was suppressed by the military judge in the earlier Mil. R. Evid. 412 hearing. Trial defense counsel asked for clarification on the use of the evidence. Over trial counsel's objection, the military judge ruled that the trial defense counsel could use the evidence for the

---

[2] The trial judge ruled for Appellant on other portions of the Mil. R. Evid. 412 Motion, to include that Ms. AG went on dates with Appellant while her fiancé, Specialist CG, was deployed.

purpose of motive to fabricate, but not for any type of argument about Ms. AG's propensity. After making this ruling, the following exchange occurred:

> MJ: Defense counsel, does that satisfy you? Is that what you intend to do with it anyways?
>
> DC: Yes, sir.

During closing argument, trial defense counsel argued that Ms. AG had a motive to fabricate because consensual sexual activity between her and Appellant would endanger the relationship she had with SPC CG, who she had married by the time of trial. The trial defense counsel earlier introduced this theme during voir dire when the members agreed that since Ms. AG had a long-time boyfriend at the time of the incident, her desire to cover up consensual sexual intercourse might provide a motive to lie.

"We review the military judge's ruling on whether to exclude evidence pursuant to [Mil R. Evid.] 412 for an abuse of discretion. Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo." *United States v. Ellerbrock*, 70 M.J. 314, 317 (C.A.A.F. 2011) (citing *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010)).

In *Ellerbrock*, our superior court determined that based on the unique facts of that case, evidence of an alleged victim's previous consensual affair was constitutionally required to be admitted. *Id*. at 320. The court explained that the victim did not want her marriage to end, she was afraid her husband would divorce her after the prior affair, and she knew that her husband's reaction to the first affair included kicking down her former paramour's door. *Id*. at 319. "Because evidence of [the wife's] prior affair was relevant, material, and the probative value of the evidence outweighed the dangers of unfair prejudice, the evidence of [her] prior affair was constitutionally required in this case." *Id*. at 320. The court then applied the factors articulated in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)[3] and determined that the error in excluding the evidence was not harmless beyond a reasonable doubt because the prosecution's case was not overwhelming, the victim's testimony was crucial, there was conflicting eyewitness testimony with significant contradictions, and that none of the questions on cross-examination of the victim concerned the previous affair. *Ellerbrock*, at 320.

Although Appellant argues that his case mirrors that in *Ellerbrock*, the distinction between that decision and the present case is significant. In *Ellerbrock*, the court reasoned that the victim was more likely to lie and state the sexual activity was not

---

[3] "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

consensual because she wanted to preserve her marriage and she had heightened concerns that her husband was more likely to divorce her because of his reaction to her previous affair. In the present case, Ms. AG was aware that her actual husband, SrA BC, had a dramatic reaction to finding out she had engaged in adultery; however, by the time of the incident on 1 October 2010, it is clear that neither she nor her husband were interested in remaining married. She and SrA BC had separated in July 2010 and had signed a separation agreement.[4] She and SPC CG were in a serious relationship that would eventually lead to marriage. At that time of the incident, she referred to herself as SPC CG's wife, they established an email account together in their married name, and had serious discussions of marriage although they were not "officially" engaged.

The trial judge appropriately ruled that the admissible and relevant information was that Ms. AG was in a committed long-term relationship with SPC CG at the time of the offense as this provided a potential motive to obfuscate a consensual relationship with another man. The trial defense counsel was able to use this evidence during argument. It was not relevant how her soon-to-be ex-husband reacted when he found out about her previous adulterous affair with SPC CG given that this was an abandoned marriage by the time of the offense. Likewise, it is not relevant that at the time of the offense she was still legally married to SrA BC and engaged to SPC CG. This court finds that the trial judge did not abuse his discretion.

*Appellate Review Time Standards*

"Whether an appellant has been denied the due process right to a speedy post-trial review and appeal, and whether [any] constitutional error is harmless beyond a reasonable doubt are reviewed de novo." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this court and our superior court is within the 18-month standard. *See Id.* at 136; *United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see Barker*, 407 U.S. at 530.

---

[4] The "separation agreement" was a document signed by both Senior Airman BC and Ms. AG although it was never notarized nor filed with any court system.

This case was originally docketed with this court on 14 September 2011 and our initial decision was issued on 19 August 2013, more than 18 months later. This initial delay is therefore facially unreasonable. We analyze the *Barker* factors for the delay leading up to our 19 August 2013 decision and find no due process violation resulted from the appellate delay. The length of delay was nearly 23 months, is facially unreasonable, and thus weighs in favor of Appellant. Appellant did not make any demand for a speedy appellate review until he filed his supplemental pleading on 4 May 2015. Appellant does not articulate any prejudice resulting from the delay; instead, he asks this court to infer that the length of the appellate processing has resulted in increased anxiety which amounts to prejudice. We decline to do so. When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As for the time that has elapsed since this court's 19 August 2013 decision, we find no due process violation. The *Moreno* standards continue to apply as a case continues through the appellate process. *Mackie*, 72 M.J. at 135–36. The time between our superior court's action to return the record of trial to our court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136. Furthermore, the reason for the delay between 19 August 2013 and our opinion today was to allow this court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[5] to appoint civilian employees to the service courts of criminal appeals. *See Janssen*, 73 M.J. at 221. We reject Appellant's argument that, because the Secretary of Defense's appointment of the civilian employee was invalid and of no effect, the *Moreno* clock was not tolled by our first decision.[6]

Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224; *see United States v. Harvey*, 64 M.J. 13, 24–25 (C.A.A.F. 2006). In *United States v. Gay*, 74 M.J. 736, (A.F. Ct. Crim. App. 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross

---

[5] U.S. CONST. art II § 2, cl 2.

[6] Even assuming the total appellate processing of this case raises a presumption of unreasonable delay, we conclude the delay is harmless beyond a reasonable doubt. We have considered the totality of the circumstances and the entire record. When we balance the other three factors, we find the post-trial delay in this case not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced that even if there is error, it is harmless beyond a reasonable doubt under the *Barker* and *Toohey* analyses.

indifference, evidence of institutional neglect, harm to the appellant or to the institution, if relief is consistent with the goals of both justice and good order and discipline, and can this court provide any meaningful relief. *Gay*, at 744. No single factor is dispositive and we may consider other factors as appropriate. *Id.*

After considering the relevant factors in this case, we determine that no relief is warranted. Although the initial delay exceeded the *Moreno* standard by five months, no other time period exceeded the standards. Even analyzing the entire period from the time the case was first docketed until today, we find there was no bad faith or gross negligence in the post-trial processing. The reason for the delay after our initial decision was to allow this court and our superior court to fully consider a constitutional issue of first impression. While the answer to this issue may seem clear now with the advantage of subsequent decisions, we note that the appellant's initial petition to our superior court did not specify the appointment as an error. We find no evidence of harm to the integrity of the military justice system by allowing the full appellate review of this novel issue. Appellant has not articulated any harm. At most Appellant asks us to infer increased anxiety; we decline to do so. Furthermore, the impact of any delay was mitigated when we specifically allowed Appellant to file a supplemental assignment of error. We have the authority to tailor an appropriate remedy without giving Appellant a windfall. *See Tardif*, 57 M.J. at 225. Based on our review of the entire record, setting aside Appellant's sole punishment of a punitive discharge would be an intolerable windfall. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred.[7] Articles 59(a) and 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[7] The court notes the action does not include a date and both the action and the court-martial order (CMO) fail to reflect the involuntary leave pursuant to Article 76a, UCMJ, 10 U.S.C. § 876a. We assume this was a clerical error and Appellant was ordered onto excess leave. *See* Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 9.38 (6 June 2013). Additionally, the first CMO had typographical errors. We ordered, and were provided, a corrected Action and CMO. Rule for Courts-Martial 1114; AFI 51–201, ¶ 10.10.